DAGGETT v. CITY OF FT. WORTH et al.
(No. 798.)

(Court of Civil Appeals of Texas. Amarillo.
May 29, 1915.)

1. DEEDS ⊗⇒145—CONSTRUCTION—CONDITION SUBSEQUENT.

To create a condition subsequent, the language of a deed must be clear, and the condition must be created by express terms or clear implication, and, where the language is ambiguous, it will be construed to create a covenant, rather than a condition.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. § 471; Dec. Dig. ⊗⇒145.]

2. DEEDS ⊗⇒155—CONSTRUCTION—CONDITION SUBSEQUENT.

A deed conveying property to a city in consideration that the premises be used for free school purposes and that the city erect thereon a suitable building within twelve months or the property shall revert to the grantors, is a conveyance on condition subsequent.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 488–495; Dec. Dig. ⊗⇒155.]

3. DEEDS ⊗⇒156—CONDITION SUBSEQUENT—RIGHT OF RE-ENTRY—HEIR.

Unless the heir of the grantor is named in a deed conveying on condition subsequent, he cannot re-enter, though the condition is breached.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 496–499; Dec. Dig. ⊗⇒156.]

4. DEEDS ⊗⇒155—CONDITION SUBSEQUENT—DURATION.

Where property is conveyed on condition subsequent for a particular use for the purpose of enhancing the value of grantor's adjoining property, without any provision as to the duration of the condition, it will not be held to continue after the particular use specified ceases to be of any benefit to the adjoining property.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 488–495; Dec. Dig. ⊗⇒155.]

5. DEEDS ⊗⇒134—"CONDITION SUBSEQUENT"—"CONDITIONAL LIMITATIONS."

A conditional limitation differs from a condition subsequent in that the former terminates the estate on the happening of the event, while the latter designates a happening which gives the grantor or his heirs, if mentioned, a right to terminate the estate.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 448, 449; Dec. Dig. ⊗⇒134.

For other definitions, see Words and Phrases, First and Second Series, Conditional Limitations; Condition Subsequent.]

6. DEEDS ⊗⇒160—CONDITION SUBSEQUENT—BREACH.

Where property was conveyed on condition subsequent, that it be used for free school purposes, and after its use as such for a time the school was discontinued, but the school board was considering a plan to reopen another school thereon when the grantor, less than two years after the discontinuance of the former school, brought suit to enforce her right of re-entry, the condition was not shown to have been breached.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 505–517; Dec. Dig. ⊗⇒160.]

Appeal from District Court, Tarrant County; R. H. Buck, Judge.

Action by E. J. Daggett against the City of Ft. Worth and others. Judgment for the defendants, and plaintiff appeals. Affirmed.

Bryan, Stone & Wade, of Ft. Worth, for appellant. Sidney L. Samuels, of Ft. Worth, for appellees.

HENDRICKS, J. The property in controversy, a block of ground 200 feet square, situated in the Daggett's addition to the city of Ft. Worth, was owned by Mrs. Daggett, the appellant, as her separate property. On July 17, 1884, she conveyed the same, joined by her husband, E. B. Daggett (since deceased), to the city of Ft. Worth, by a general warranty deed, containing the recitation:

"In consideration of the sum of $10.00, to us in hand paid by the city of Ft. Worth, * * * and the further consideration hereinafter mentioned, have granted, sold, and conveyed"

—to said city the described property, and containing the further recitation, immediately following the description of the property:

"And the further consideration above mentioned is that said premises shall be used for free school purposes, and that said city of Ft. Worth will erect a suitable schoolhouse or schoolhouses thereon, or the above-described premises shall revert to said E. B. and E. J. Daggett, but we will allow said city of Ft. Worth twelve months from this date to finish said schoolhouse or schoolhouses."

The recited nominal consideration, "$10.00," was never paid, nor intended to be paid. It was admitted at the trial that the grantee performed the condition relating to the erection of a school building within the period of 12 months stipulated in the deed.

Appellant, pleading her cause of action specially, in addition to trespass to try title, undertook to recover the property by virtue of the reversionary clause in the deed, on the ground that the same had been abandoned for school purposes.

The trial court found:

"That said city of Ft. Worth and its successor in charge of the public schools, the independent school district of the city of Ft. Worth, for a period continuously of more than 26 years, did actively conduct a public school in said building, teaching and educating the children of the city therein"

—which finding was supported by the testimony. The city of Ft. Worth discontinued the use of the particular building for the purpose of conducting the school therein, upon the erection of another new school building in the same ward, costing about $30,000. We are unable to determine the exact date, but from the record we infer that this occurred some time in 1910. The appellant filed her original petition in July, 1911, thereafter amending in November, 1912, alleging, in said amendment, that the old building had not been used for school purposes "during the past two years," from which, according to the presentation by the pleading, the discontinuance of the use of said building occurred a comparatively short time—a few months— previous to the institution of this suit.

At the time of the conveyance of this block

to the city Mrs. Daggett was the owner of a great deal of the surrounding property in the Daggett's addition, consisting partially of whole blocks, and of lots in different blocks, and, so far as this record presents, has sold only one lot out of her holdings since that time. She testified:

"The real consideration I expected to receive in return for the conveyance of this lot to the city was the benefit which would come from the erection and maintenance of a school; I thought this would enhance the value of my property."

Appellant's son, who is the manager of her holdings, testified that she had from 40 to 70 lots, and also owned from 50 to 60 houses, in that community; the houses rented about equally to negroes and whites. It is inferable, however, from other testimony, that the proportion of negro tenants and residents upon her property is considerably more. It is also deducible that this particular section of the city began to be stamped as a negro community by the action of appellant and other property owners renting to them before the discontinuance of school in the building, and Smith, one of the appellant's witnesses, said "that, where negroes begin to encroach upon a white community, the white people move away."

The trial court also found:

"That the inducing cause to grantors in conveying the property to the city of Ft. Worth was the enhancement in value to contiguous property owned by them that would result from the location of said school building; and I further find in this connection that such enhancement as would accrue from such cause has already been enjoyed and reaped, and that the continuance of school in such premises would not contribute to enhancement in values of adjacent property, nor would its removal therefrom reduce or injure the values thereof, and that the suspension of school in such building did not affect the value of grantors' adjacent property, nor would the removal of the school therefrom preclude such enhancement, or even tend to reduce the rental or sales value of such property, for that long prior to the suspension of school in such building values in said neighborhood had fallen and will continue to fall because of the encroachment of the negro population thereon and a steady exodus of whites therefrom, with which condition the suspension of the school had nothing to do."

[1] It is true that:

"To constitute a condition subsequent, upon which a forfeiture may be declared, because of a failure of its performance, the language must be clear, and the condition must be created by express terms, or by clear implication, and it must be strictly construed." South Texas Telephone Co. v. Huntington, 104 Tex. 353, 136 S. W. 1053, 138 S. W. 381.

[2] We think, however, the particular instrument creates the condition: First, for the erection of a suitable school building within the period stipulated; and, second, that the premises should be used for "free school purposes." The collocation of the language in the clause defining the subsequent conditions may not be as appropriate, nor as fully expressive, as desired, but we think a fair interpretation bespeaks such meaning and intention.

As to the rule of construction applicable to conditions subsequent, Justice Kent also expresses it:

"Conditions subsequent are not favored in law, and are construed strictly, because they tend to destroy estates; and the vigorous exaction of them is a species of summum jus, and in many cases hardly reconciliable with conscience." 4 Kent, 130.

And the Supreme Court of Massachusetts said, in Merrifield v. Cobleigh, 4 Cush. (Mass.) 178, 184, in speaking of a condition subsequent:

"Such a condition, when relied upon to work a forfeiture, is to be construed with great strictness; the demandant shall have his exact legal right, and no more."

Of course, the principle of interpretation, evidenced by the above quotations is more often referable to the language of the instruments, whether from its phraseology, bearing in mind the rule of construction against the condition and in favor of an indefeasible estate, the intention is sufficiently expressed, or clearly implied, that a defeasible condition exists; and, again, where it is difficult to distinguish whether a language expresses a subsequent condition or a covenant, it will be declared a covenant, and not a condition, not upon a process of reasoning satisfactory as to the real intention of the parties, but more in deference to the rule that the law leans against the condition. Byars v. Byars, 11 Tex. Civ. App. 568, 32 S. W. 925. It is said, when the attempt is made to imply a condition subsequent by interpretation:

"If the instrument will bear any reasonable construction that will defeat the springing of an implied condition subsequent, at law as in equity, that construction will be adopted. Estates upon implied conditions * * * cannot be created by deed, except where the terms of the grant will not admit of any other reasonable construction." Ryan v. Porter, 61 Tex. 109.

[3] It is familiar that, unless the heir is named, he cannot re-enter, though the condition is breached; the estate does not inure to his benefit. And the Supreme Court of New Hampshire (Emerson v. Simpson, 43 N. H. 475, 80 Am. Dec. 184, 82 Am. Dec. 168) holds the converse, that where a deed is made upon condition that the grantee shall "forever" keep up and maintain a fence between the land conveyed and the land of the grantor, the neglect by the widow to repair and keep up the fence after the grantee's death will not forfeit the land.

[4] The inculcation of this doctrine, rather abstractly reproduced by us, becomes concrete to the extent as pointing the path universally traveled. Of course, if the deed in question had used more definite language that the premises should be "forever" used for free school purposes, the performance would then not have been extended longer than the life of the grantor. The question is, however, under the language of the instrument, and the conditions as presented, does the instrument mean "forever," limiting the use of the word to the longest time

which, under the law, performance could have been exacted? The deed does not in terms stipulate that the premises shall be a permanent site for free school purposes, nor use language of an indefinite duration for the establishment of the premises for the use of the school indicating the longest length of time the law would permit. It does not say that the use for free school purposes shall be for all time; to some extent you have to imply such an extended and indetermine continuance of the performance by the grantee. The deed merely says that the premises shall be used for "free school purposes," and that the grantee shall erect a suitable schoolhouse thereon, "or the premises shall revert" to the grantors. The reasoning of the Supreme Court of Massachusetts in Bradstreet v. Clark, 21 Pick. (Mass.) 389 (particularly on pages 396, 397), applies the same strict rule as to the performance of the condition against the grantor to prevent the forfeiture as applied by the courts to the verbiage of instruments to prevent the same result. That case (requiring a devisee to pay certain legacies, otherwise the estate was to revert) was one, literally speaking, where performance was excused to the devisee, because the proper demand for the payment of the legacy was not made of him. There was a demand, but the court, in applying the general rule of construction, required "greater precision and more perfect accuracy in a demand" in that character of case than would probably have been applied in other matters. The court resolved supervening conditions against the beneficiary of the forfeiture, and in favor of the party who was to perform, and whose estate was subject to defeasance.

Where property was conveyed to school directors and their successors for a site for a schoolhouse and church, with a reservation that the same should revert in case its use for such purpose was abandoned, proof that the building constructed thereon had been neglected to such an extent that it was in a very dilapidated condition, and that shortly prior to the filing of the bill school was not taught in the building, because of the erection of a more commodious building in another place, its use being continued, however, for church purposes, was insufficient to show an abandonment. Humphreys County Board of Education v. Baker, 124 Tenn. 39, 134 S. W. 863.

The Supreme Court of Tennessee refused to separate the conditions, and reasoned that, as the conveyance was made to the school directors for a site for both a schoolhouse and a church, the use of the property would have to be abandoned, not only for the purpose of a schoolhouse, but also for the purpose of a church.

The case of Maddox v. Adair, 66 S. W. 812 (writ of error denied), is a little difficult to understand upon analysis as to the real basis of the opinion, except that it is certain that the stipulation in the deed for the maintenance of a "first-class seminary of learning" upon the land conveyed was held to mean ordinary schools and academies, as well as colleges and universities. In that case, as here, the consideration to the grantor was the enhancement in value of his property. He had no interest in having the school maintained for any other purpose. The court said:

"Under these circumstances, the only reasonable inferences to be drawn from the use of the word 'maintenance' is that the school should be maintained until he had realized his expected profits. When he sold his adjacent lots he ceased to be concerned in the continuance of the school, and the purpose of the condition was accomplished. This construction is also in harmony with the language of the condition: 'The establishment and maintenance of a first-class seminary of learning.' Maddox might have required the maintenance of the school permanently, or for a term of years, or until the happening of a particular event, but he did not. He simply provided for the 'maintenance' of the school, and such a provision does not necessarily mean that it should be maintained perpetually. To give to this provision such a forced construction and compel a forfeiture is contrary to the policy of the law and the apparent intention of the parties."

While in that cause (one of condition subsequent) the grantor had parted with his remaining interests, and in this case the same party has retained her property, there, as here, the grantor had reaped the reward, in so far as enhancement was concerned, according to the findings of the court, and here the grantor, if there has been a depreciation, aside from a general condition of depression, has partially contributed by her action in permitting the surrounding property to become started as a negro community, which was a matter wholly within her own control. Presumptively, to sustain the judgment of the court, we conclude that the discontinuance of a school in the building (especially when a more pretentious school building had been erected near the same property) did not injure in the slightest the value of the grantor's holdings, or that a continuance of the same condition would in the future affect the value of said property in any manner.

The case of Railway Co. v. Barbour, 89 Ind. 375, is more nearly in point. The grantor conveyed lands "expressly for the use and purpose of depot grounds" for the railroad; and, if there should be a failure to erect buildings and occupy for that purpose, the land should revert to the grantors. The court said:

"The appellants * * * deny the perpetuity of the condition. They claim that the erection of the buildings and the occupancy of the lot for depot purposes, in a reasonable time after the execution of the deed, and the continued possession thereof for such purposes for 30 years, avoided the condition and made the estate absolute. * * * It may be presumed that when the conveyance was made the grantors owned other contiguous real estate, the value of which they supposed would be increased by the occupancy of the lot conveyed as depot grounds. * * * The point, of course, to be arrived at in every case, is to ascertain the intention of

the parties. And we may suppose in this case, from the language of the deed and the surrounding circumstances of the transaction, so far as they are disclosed in the complaint, that the grantors' object in the conveyance was satisfied in the occupancy of the premises by the railroad for depot purposes for a period of time nearly equal in duration to the average of human life. * * * The condition of the grant in the present case was, in effect, that the grantee should locate and occupy the lots as depot grounds. No time was mentioned, and the language does not, strictly construed, mean perpetuity. We think 30 years' occupancy of the lots as depot grounds was a substantial compliance with the condition."

The following cases, while not in point, as involving conditions subsequent, are profitable, however, in certain portions of the same as bearing upon the interpretation of contracts as to the meaning of same, involving the permanent or continued maintenance for all time of the particular sites or the structures embraced in the instruments. Sumner v. Darnell, 128 Ind. 38, 27 N. E. 162, 13 L. R. A. 175; Fuquay v. Trustees (Ky.) 58 S. W. 814; Texas & Pacific Ry. Co. v. City of Marshall, 136 U. S. 393, 10 Sup. Ct. 846, 34 L. Ed. 387; Newton v. Mohaning County, 100 U. S. 548, 25 L. Ed. 712; Mead v. Ballard, 7 Wall. 290, 19 L. Ed. 190.

[5] Appellant cites the cases of Stewart v. Blain, 159 S. W. 928; McBride v. Farmers' & Merchants' Gin Co., 152 S. W. 1135; and Norris v. Coffman, 95 S. W. 1088. The two first cases were treated as conditional limitations, and the Stewart-Blain Case was clearly of that character; and, whatever may be said as to the reasons for the technical difference between conditional limitations and conditions subsequent, the common-law distinctions clearly exist and the divergence of rights clearly ensues from the creation of the different conditions, and are distinctly recognized in this state. Wiederanders v. State, 64 Tex. 133; Green v. Gresham, 21 Tex. Civ. App. 601, 53 S. W. 382. The conditional limitation marks the utmost time for the continuance of the estate, and the same reverts eo instante. The condition subsequent designates an event or happening which, if it takes place within the period mentioned, or within the time clearly implied will defeat the estate, provided the grantor, or his heirs if mentioned, manifest certain acts. "A stranger may take advantage of a limitation." 2 Dev. Deeds (3d Ed.) § 974, p. 1823, and cases cited. The estate ceases perforce of the limitation upon the same. The Norris-Coffman Case, supra, was one practically of immediate breach by the grantee, and almost immediate assertion by the grantor, under the contract, and has no just application to the instant case. The cases cited are also distinguished upon the facts from this record, properly weighed.

[6] The trial court also found that at various times after the school in the building was discontinued the members of the school board having charge of the public schools discussed plans for the utilization of the building for the benefit of certain classes of older children to be taught and educated, and that they expect to use said building as a means for providing for this class of mature children who, for one reason or another, should not mingle or fraternize with children of a tender and susceptible age, and found that it was not the intention of the school board to abandon the premises for school purposes, and that the suspension of the use of the building is purely temporary. The class of children more particularly referred to is one comprehending those of an age who on account of their deficiencies, cannot be graded in the public schools except with much younger children, and another comprehending children of an incorrigible nature, who should be separated from other children. The court again found that at one time during the period of a suspension, when the Ft. Worth High School had been destroyed by fire, it was determined by the board of school trustees to use the building as a high school building, and to that end repairs were made upon the building; but later, because of its remoteness to other parts of the city, another building was selected in lieu thereof.

The case of Town of East Greenwich v. Gimmons, 34 R. I. 526, 84 Atl. 1008, discloses that school was held in a district schoolhouse located on land, the title to which was conveyed to the inhabitants of the district, and in June, 1902, it was voted to unite this school with that of another district, and that the children should be sent to such other district, after which time no school was kept in the schoolhouse of the old district, but the keys were retained by the town treasurer, and the books and paraphernalia were left in the schoolhouse, when in 1910 it was voted to reopen the abandoned schoolhouse, and a carpenter was employed to make necessary repairs. The grantor's assignee through his agent had taken possession of the property, and the repairs could not be made. Held that there was no abandonment of the property by the township for school purposes, so that it did not revert to the heirs of the grantor under a deed conveying the property to the inhabitants of the district so long as it should be used for school purposes. The facts of that case are quite similar on the issue of abandonment, except that the action of the school trustees was probably more definite in that case as to the future use of the building. While, as stated, we are unable to ascertain definitely the interim, except to say that it was several months between the discontinuance of the school and the institution of appellant's suit, claiming forfeiture, still the comparatively short length of time, measuring this interim, should have some bearing. We presume that the discussion between the members of the school board of superintendent Cantwell's suggestions, relative to a reopening of the building for the school purposes indicated by the findings of the court, extended at different times over a period

from the time of the discontinuance of the school in the old building to some period after the institution of this suit. We are not able to say just when the school board repaired the building for use for high school purposes (occasioned by the destruction by fire of the city's school building), but we assume this was done previous to the institution of this suit; the trustees would not probably have expended money on a building involved in a court controversy. The action of the board in repairing the building for the purpose of conducting the high school therein was definite as corroborative of their intention to hold the building, though the same, on account of its inaccessibility, was not used. The intentions of the board for a resumption of the property for school purposes, it is true, have never been developed into positive and definite action on its part. It is inferable that, if the board had the funds to have appropriated for the school purposes planned by Superintendent Cantwell, the board's action to that end would have been definite, unless, of course, deterred by the legal controversy over the property. The probative value in appellant's favor on account of the claimed indefiniteness of action by the board to consummate the purposes desired is weakened to some extent by the thought, if an effort were made to obtain the money, and any resolution had been definitely passed for the purpose (regarding this board as business men), it would have been unavailing with the title involved in litigation. The burden is upon the appellant to show abandonment. Upon the development of the whole case at its close we are not prepared to say, in this condition of the record, that this burden has been wholly discharged, and that this record, as an undisputed issue, shows abandonment.

We think upon the whole that the judgment of the lower court should be affirmed; and it is so ordered.