ARNOLD et ux v. SCHARFF. (No. 8867.)*

(Court of Civil Appeals of Texas. Ft. Worth. April 20, 1918. Rehearing Denied Nov. 9, 1918.)

1. DEEDS ⬤⮞155—CONDITION SUBSEQUENT—COLLATERAL AGREEMENT.

Where warranty deed in exchange of properties conveyed fee simple title, but collateral written agreement provided grantees should reconvey if within fifteen years title to property received by grantor from them should fail, such collateral agreement merely ingrafted on deed a condition subsequent, on happening of which grantor would be entitled to reconveyance, and did not prevent vesting of title and right to possession in grantees subject only to defeat on happening of condition.

2. DEEDS ⬤⮞168—CONDITION SUBSEQUENT—NECESSITY FOR ELECTION TO DEFEAT ESTATE.

If conveyance of an estate is made on condition subsequent, the estate is defeated only at the election of the parties who can take advantage of the breach, and not on the mere happening of the condition.

3. DEEDS ⬤⮞166—CONDITION SUBSEQUENT—WAIVER.

A party entitled to right of entry because of breach of a condition subsequent may waive performance by an actual release of the condition or by an express license.

4. DEEDS ⬤⮞166—CONDITION SUBSEQUENT—WAIVER OF RIGHT OF RE-ENTRY—RELIEF FROM OBLIGATION TO RECONVEY.

Where a conveyance was made on condition subsequent, by written collateral agreement, that grantees should reconvey if title to property they conveyed to grantor should be defeated within 15 years, and, such condition having happened, grantor sued for reconveyance, and subsequently contracted to release property from her claim if a grantee, an attorney, should successfully defend a criminal case, which he did, grantor not only waived her right of re-entry for breach of condition, but expressly relieved grantees from obligation to reconvey.

5. CONTRACTS ⬤⮞108(2)—PUBLIC POLICY.

Contract by an attorney, grantee in a deed on condition subsequent, successfully to defend a criminal case in consideration of the grantor's releasing him from his obligation to reconvey the property to her on happening of the condition, grantor being first wife of defendant in criminal case, held not void as against public policy, particularly where defendant's second wife acquiesced.

6. DEEDS ⬤⮞166—CONSIDERATION—RELEASE.

Services of an attorney, grantee in a deed on condition subsequent, in successfully defending a criminal prosecution against grantor's former husband, with assent of present wife, held sufficient consideration to support grantor's contract to release to attorney her claim to reconveyance of property arising out of happening of condition subsequent.

7. DEEDS ⬤⮞168—CONDITION SUBSEQUENT—RIGHT OF ENTRY FOR CONDITION BROKEN—EXECUTION PURCHASER.

Only the grantor and his heirs have a right to enter on condition broken, and they lose their rights if they convey away their reversion, so that a purchaser of the land on execution sale under judgment against the grantor gained no right of entry.

8. EXECUTION ⬤⮞272(2)—SALE—NOTICE TO PURCHASER OF POSSESSOR'S RIGHTS.

Actual possession of land by grantees by deed on condition subsequent put purchaser at execution under judgment against grantor on inquiry as to rights under which grantees claimed.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Suit by Minnie Scharff against Pete Arnold and wife, wherein Max K. Mayer intervened. From a judgment for the intervener, defendants appeal. Reversed and rendered.

John L. Poulter, of Ft. Worth, for appellants.

Wray & Mayer, of Ft. Worth, for appellee.

---

⬤⮞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error refused March 12, 1919.

CONNER, C. J. The record in this case discloses the following material facts. In an exchange of properties between appellants and Minnie Scharff, the latter on May 12, 1910, executed a warranty deed conveying to the appellants the south one-half of the north one-half of block 12, Edwards Heirs addition to the city of Ft. Worth. At the same time the Arnolds executed a written contract reciting that—

"As part of the consideration received by the said Mrs. Scharff from the said Arnolds for the south one-half of the north one-half of block 12, Edwards Heirs addition to the city of Ft. Worth, Mrs. Scharff received certain land described as follows: 'The east 50 feet of lot 1, block 11, Daggett's Second addition to the city of Ft. Worth, Tarrant county, Texas. * * *' In accepting this property the said Mrs. Scharff was not quite satisfied with the title, and was not willing to accept same as part of the consideration in the sale from her to the said Arnolds. Therefore, as a further consideration for the exchange, it is agreed on the part of Pete and Mrs. May Arnold that the property known as the south one-half of the north one-half of block 12, Edwards Heirs addition to the city of Ft. Worth, Tarrant county, Texas, shall not vest absolutely in them until after the expiration of fifteen years from this date. Should Mrs. Scharff's title not be disturbed or she not lose the land known as the east 50 feet of lot 1, block 11, Daggett's Second addition within fifteen years, then the title to the property conveyed to the Arnolds by her shall vest absolutely in them; but should the said Mrs. Scharff lose the said property known as the east 50 feet of lot 1, block 11, Daggett's Second addition to said city, within fifteen years, then in that event the title to the south one-half of the north one-half of block 12, is to revest in her, and the said Arnolds obligate and bind themselves to reconvey said property to her."

This contract, together with the deed to the Arnolds, was duly acknowledged, and both instruments were duly recorded. In a suit thereafter instituted in which the heirs of one Lucinda Clark were claimants, Mrs. Scharff on, to wit, January 27, 1913, suffered a judgment of ouster dispossessing her of the said lot received by her from the Arnolds. Later, and after Mrs. Scharff had been dispossessed of the property received from the Arnolds, on, to wit, July 10, 1913, Mrs. Scharff instituted this suit in the form of trespass to try title against Pete and May Arnold to recover the said south one-half of the north one-half of block 12, Edwards Heirs addition conveyed to the Arnolds as stated.

The record discloses no further action until November 12, 1913, upon which date Minnie Scharff entered into a contract in writing, duly witnessed and executed, but never acknowledged or recorded; which recites that—

It "was made for the employment of Pete Arnold as attorney at law to secure his service as attorney for Charles Miller, who is charged with robbing the express or interurban office, or assisting in robbing said office, of $750. * * * Wherefore the said Minnie H. Scharff agrees to release the property of Pete Arnold and May Arnold as a fee for the said Charles Miller, who is under bond to appear in the district court, who is charged with robbery. Said property is situated in Tarrant county, Tex. Said deed was executed on the 12th day of May, 1910, and recorded on the 14th day of May, 1910, in Tarrant county, Tex., in volume 335, p. 470, wherein the said Minnie H. Scharff holds claim against said property which she is to release to said Pete Arnold for his said service as attorney at law. Now, provided the said Pete Arnold does not get said Charles Miller clear or beat his case, in that event this document is null and void."

The Miller referred to in the contract was the divorced husband of Mrs. Scharff, then living with his second wife. The evidence shows that the second wife had also employed attorneys to represent Miller, and that she was cognizant of and made no objection to the above contract by Mrs. Scharff. It further appears that there was a trial of the said Miller, and that he was convicted, but the judgment of conviction was later set aside and a new trial granted. Thereafter, at a date not clearly shown in the evidence, Pete Arnold secured an affidavit from the principal prosecuting witness, which exculpated Miller, and the case was thereupon and thereafter voluntarily dismissed by the county attorney on the ground that he was without sufficient evidence to convict.

The record fails to disclose the execution of any formal release by Mrs. Scharff to the Arnolds of her claim to the property in controversy, or to show that the suit against the Arnolds by Mrs. Scharff was dismissed. There is nothing in the record, however, to show that after the dismissal of the case against Miller that Mrs. Scharff took any active part in a further prosecution of this suit against the Arnolds. It seems that the suit remained pending without action of any kind until on the 3d day of July, 1917, when Max K. Mayer intervened in the suit, claiming title to the property as his own under an execution issued out of the county court of Tarrant county, Tex., on the 17th day of March, 1916, by virtue of a judgment in favor of J. S. Jackson against Mrs. Minnie Scharff for the sum of $41.25. It was alleged in the plea of intervention that said execution had been duly levied upon the property last mentioned, and that by virtue thereof it had been duly sold by the sheriff to the said Max K. Mayer for the sum of $45, he being the highest and best bidder therefor, and that by virtue of these proceedings the sheriff had duly conveyed to him the property. The intervener further adopted all the allegations of the plaintiff's pleadings as his own, and further alleged that he purchased the property in good faith

for a valuable consideration, without any notice of any of the matters set up in the defendant's answer. The defendants, appellants here, answered the plea of intervention with a plea of not guilty and pleading specially the contract with Mrs. Scharff for the employment of Pete Arnold, alleging that the services had been performed as therein contracted for, and, further, that at the date of the conveyance of Mrs. Scharff on the 12th day of May, 1910, it was provided by Mrs. Scharff in a contract then made that appellants should go into immediate possession of the property conveyed to them, and that for any improvements made by them the Arnolds should be compensated by Mrs. Scharff, in the event the property ever had to be surrendered by the Arnolds in accordance with the terms of the contract hereinbefore mentioned.

Upon the trial the evidence without dispute established the facts substantially as we have recited them, and it is also further undisputed that Max K. Mayer was one of Mrs. Scharff's attorneys in the original institution and prosecution of Mrs. Scharff's suit against the Arnolds for the recovery of the property in controversy. Nor is there a dispute in the evidence that the Arnolds placed upon the property received by them of Mrs. Scharff permanent and valuable improvements of the value of about $1,200 in accordance with the contract of Mrs. Scharff that they might so do and therefor receive compensation. It is also true that Max K. Mayer testified as a witness on the trial. He testified that he knew both appellants, and had known Mrs. Scharff for 15 years; that he had known Mrs. Scharff intimately for the last 10 years, and knew her financial condition on the 12th day of November, 1914; that she was then insolvent and had been prior thereto. He failed to deny, however, knowledge of the several contracts of Mrs. Scharff as hereinbefore cited. He also failed to deny knowledge of the fact, which was also established by the undisputed testimony, that Pete and May Arnold had gone into possession of the property in controversy soon after its conveyance to them by Mrs. Scharff in 1910, and had continuously remained in possession up to the time of the trial.

Upon the state of facts and pleadings above recited the court gave a peremptory instruction to the jury to find in favor of the intervener, Max K. Mayer. Upon return of the verdict of the jury in accord with this instruction judgment was entered in intervener's favor against both the Arnolds and Mrs. Minnie H. Sharff for the title and possession to the property conveyed to the Arnolds on May 12, 1910, and the Arnolds have appealed.

[1, 2] While the appellee, by brief, vigorously maintains the propriety of the court's peremptory instruction and the correctness of the judgment, we are at a loss to determine upon what theory or principle the judgment as rendered can be supported. It seems clear to us that the deed of Mrs. Scharff to the Arnolds, dated May 12, 1910, vested in them the legal title, and that the contract of the Arnolds contemporaneously executed had the effect only of ingrafting upon the deed a condition subsequent, upon the happening of which Mrs. Scharff would be entitled to a reconveyance. In defining an estate upon condition it is stated in section 271 of Tiedeman on Real Property that—

"This estate is one which is made to vest, to be enlarged or defeated, upon the happening or not happening of some event. If the estate is to be created or enlarged upon the performance of the condition, and not before, it is called a condition precedent; if the condition is to defeat an estate already vested, it is a condition subsequent."

To hold that the contract of the Arnolds to reconvey the property to Mrs. Scharff in the event Mrs. Scharff should lose the title to the lots accepted by her in exchange for the lots in controversy had the same effect to vest any title in Mrs. Scharff would be to leave the title to the Arnolds in abeyance, and thus to contradict the terms of the grant to them. The record shows, as stated, that the deed to them was a warranty deed, and we must assume that it contained all of the terms necessary for the passing of a fee-simple title, and the written contract executed contemporaneous therewith cannot be given the effect of nullifying the terms of the grant. On this subject it is said in 8 R. C. L. § 168, under the title Deeds, that—

"A condition subsequent, forfeiting the title to the grantor in case of breach, is not of itself repugnant to the granting clause, but where an estate is given, a restriction destructive thereof is void. A fortiori, a collateral agreement, whether prior to or contemporaneous with the deed, cannot, if not incorporated in the deed, operate to limit the estate granted, nor directly bind or limit the use of the property conveyed."

Again, referring to Tiedeman on Real Property, § 277, it is said on this subject:

"If it is a condition precedent, the failure to perform will prevent the estate from taking effect. But if it is a condition subsequent, the estate is defeated only at the election of the parties who can take advantage of the breach."

Further quoting in the same section the author says that, as a general rule, "only the grantor and his heirs have a right to enter upon condition broken, and they lose their rights if they should convey away the reversion in them. The right of entry is not an estate, not even a possibility of reverter; it is simply a chose in action."

We will not further cite authorities in support of the conclusion that the Arnolds, by the deed to them of May 12, 1910, acquired the legal title and right of possession to the property in question subject only to be

defeated upon the happening of the condition subsequent mentioned in the contemporaneous contract. We think the authorities from which we have quoted sufficiently illustrate our conclusion and state the law as so well established that it will be readily accepted without further citation of authority.

[3, 4] It follows that the title in the Arnolds was not ipso facto divested by the happening of the contingency upon which they agreed to reconvey the property ' in controversy to Mrs. Scharff. She, however, had clearly the right to institute suit for the recovery of such property, and upon proof of the breach of the condition subsequent or happening of the contingency specified in the contract, which is undisputed, she would, of course, have been entitled to recover had nothing further appeared and had she continued the prosecution of her suit. But it seems to be well settled by the authorities (see Tiedeman on Real Property, § 278) that a party who is entitled to the right of entry because of a breach of a condition subsequent may waive performance by an actual release of the condition or by express license. If so, and we do not doubt the proposition, it would seem clear that in the case before us Minnie H. Scharff, not only waived her right of re-entry, but expressly relieved the Arnolds from the obligation to reconvey to her. As stated, it is undisputed that she made a written contract to that effect upon a sufficient and lawful consideration.

[5, 6] Pete Arnold was a lawyer, and it is undisputed that he appeared and defended Miller at the trial at which he was convicted, and later further aided the defense of Miller by securing the affidavit of the principal prosecuting witness, presenting it to the proper authority, and was present when the case against Miller was dismissed. Appellee insists that such contract is void as against public policy, but we do not see just why it should be so held. Miller had been the former husband of Mrs. Scharff. The circumstances of the divorce are not shown in the record; for aught that the record shows Mrs. Scharff may have yet retained affection for her former husband, and we know of no reason, especially in view of the acquiescence of Miller's second wife, why the services of Pete Arnold as contracted for and as actually performed will not constitute a sufficient consideration to support Mrs. Scharff's contract to release her claim arising out of the happening of the contingency specified in the contract made by the Arnolds at the time of Mrs. Scharff's deed to them. In fact the record suggests that after Mrs. Scharff made the contract with Arnold for his services she no longer pressed the suit to recover the property; but, as before stated, nothing thereafter seems to have been done in the way of prosecuting the suit until after appellee filed his plea of intervention, and so far

as the record shows Mrs. Scharff thereafter took no personal interest in the prosecution of the suit. At all events we think that after the execution of this contract, followed as it was by the performance of the services contracted for, Mrs. Scharff at least was thereafter precluded from maintaining a right of entry upon the property in question, and we do not think the intervener, appellee here, has shown himself to be in a more favorable position.

[7, 8] Mr Tiedeman says (section 277) in the work from which we have heretofore quoted that, as a general rule, "only the grantor and his heirs have a right to enter upon condition broken, and they lose their rights if they should convey away the reversion in them." If this be the law, and we at present have no reason to doubt it; the intervener could not take advantage of the breach of the condition subsequent upon which reliance is made, nor is he, as is insisted, in the position of a purchaser in good faith without notice of the title in the Arnolds. All of the instruments affecting her title were of record, save only the contract of Mrs. Scharff for the employment of Pete Arnold in the defense of Miller. Intervener entirely failed to testify that he was without knowledge of that contract or of any of the contracts at the time of his purchase at the execution sale. We are authorized, therefore, to assume that he did have knowledge of the full right of the Arnolds. Moreover, it is undisputed, as stated, that the Arnolds were at all times involved in this controversy in the actual possession of the property, and, as has many times been held in this state, such possession put appellee upon inquiry as to the rights under which the Arnolds claim.

We accordingly conclude without further discussion, and without adverting to some other questions presented in the record, that the judgment below is erroneous, and that upon the undisputed facts of the case the judgment should be reversed, and here rendered for appellants.

Reversed and rendered.