### EDDY v. ST. CHARLES LAND CO.

(Circuit Court of Appeals, Fifth Circuit. March 8, 1921.)

No. 3492.

1. **Specific performance ⬅61—Acts constituted abandonment of contract.**
   The acquiescence by complainant in the sale by defendant company of a tract of land, which it was developing by means of canals and ditches, including a part of the tract which complainant had contracted to purchase, thereby becoming a member of the company, when an overflow from the Mississippi destroyed the drainage works, *held* an abandonment of his contract, and to preclude his afterwards maintaining a suit for its specific enforcement.

2. **Specific performance ⬅7—Plaintiff estopped from maintaining suit.**
   Complainant, who had contracted for the purchase of a part of a tract of land owned by defendant, by consenting to the sale by defendant of the entire tract, in the proceeds of which he was entitled to share, and by afterwards contracting with the purchaser for the repurchase of his part, *held* estopped to maintain a suit for specific performance of his original contract.

Appeal from the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

Suit in equity by W. E. Eddy against the St. Charles Land Company. Decree for defendant, and complainant appeals. Affirmed.

Henry P. Dart, of New Orleans, La. (Benjamin W. Kernan and Henry P. Dart, Jr., both of New Orleans, La., and R. L. Russell, of Princeton, Ill., on the brief), for appellant.

Charles Carroll, of New Orleans, La. (Edward C. Craig, of Mattoon, Ill., Joseph W. Carroll, of New Orleans, La., and Donald B. Craig and Fred H. Kelly, both of Mattoon, Ill., on the brief), for appellee.

Before WALKER, BRYAN, and KING, Circuit Judges.

WALKER, Circuit Judge. This was a bill by the appellant for the enforcement of the specific performance by the appellee, St. Charles Land Company (herein referred to as the Land Company) of a written contract, made on December 16, 1911, whereby the latter agreed to sell and the former agreed to buy described tracts and lots situate in the Land Company's drainage district No. 1, in St. Charles parish, La. The stated consideration was the sum of $6,359.20, $1,589.30 of which was paid when the contract was made, $791.30 thereof in cash

and $798 in the Land Company's preferred stock. The balance of the price was evidenced by the appellant's three interest-bearing notes, payable, respectively, on or before January 1, 1914, January 1, 1915, and January 1, 1916; the vendor retaining a vendor's privilege for the unpaid portion of the price, and agreeing to convey the land by warranty deed upon payment in full of the stated price. The contract contained the following:

"The said St. Charles Land Company reserves in favor of itself, its successors or assigns, a perpetual servitude on the lands above described, and on all land within said drainage district No. 1 of said St. Charles Land Company, for the purpose of keeping up and maintaining the levees and ditches constructed by said St. Charles Land Company, its successors or assigns, on said drainage district No. 1, and also for keeping up, maintaining, and operating the pumping plant on said drainage district and keeping the same in good condition and repair. The vendee acquires a right in and the use of all the driveways, roads, levees, ditches, and pumping plant on said drainage district No. 1.

"It is further contracted by and between the parties hereto (1) that both said St. Charles Land Company and the vendee herein will pay their pro rata share of keeping up the pumping plant, levees, and ditches constructed by said company on said drainage district No. 1; (2) that the parties hereto and all future purchasers shall comprise a corporation or association, which shall levee, ditch, and drain said district and maintain the drainage thereof, and for said purposes, shall levy an annual rate or charge on the owners of land in said district, and at the meetings of the members of said corporation or association each person or corporation in interest shall have a vote for each acre of land, or fraction thereof, owned by such person or corporation in the farm lots, and also a vote for each building lot owned by such person or corporation in the townsite; and (3) that any and all purchasers of lots or land in said district shall, by reason of such purchase, ipso facto, become members of said corporation or association."

At the time the contract was entered into the Land Company was engaged in the work of draining and reclaiming the land embraced in its drainage district No. 1, which was a tract of 2,860 acres, part of a tract of more than 13,000 acres it had bought. Canals and ditches had been dug, a pumping station had been installed, and the work of pumping was in progress. In May, 1912, a crevasse occurred in a levee of the Mississippi river above the Land Company's land, with the result that that land was completely inundated for a considerable time, and ditches and canals were filled up with washed material and soil, making it impossible to drain any of the land without dredging canals and ditches. Before this disaster occurred the Land Company had spent all its capital in the purchase of land and in its drainage work, and was indebted to its president in the sum of $28,000, which he had advanced to keep the work going. It could not borrow the money required to carry on its project of reclamation. The appellant was informed by officials of the Land Company of its financial condition, of its inability to proceed with the drainage undertaking, that the officers of the company thought it advisable to sell its lands as a whole and to divide the proceeds among the stockholders, restoring stockholders who had used their stock in making the first payment on land contracted for to the same footing they occupied before they parted with their stock. The plaintiff acquiesced in these suggestions, and expressed his

satisfaction when informed that the company would not expect him to make the deferred payments called for by his contract. Thereafter the Land Company employed L. B. Langworthy to negotiate a sale of the land as a whole. After the appellant was informed that this had been done his conduct indicated acquiescence. He inquired as to the prospects of success of the efforts to secure a purchaser. When informed that Langworthy had given an option on all the land at a stated price, the appellant expressed his satisfaction, and by estimating what the proposed sale, if made, would yield a share by dividing the price stated in the option by the total number of preferred shares issued by the Land Company, including those he had held, manifested his understanding that the land he had contracted for would be embraced in the proposed sale if made, and that his interest in that sale would be that of a holder of preferred stock of the Land Company. On January 2, 1914, a contract was made to sell all the Land Company land to T. P. Welsh, to whom the option had been given. That contract was ratified at a meeting of the shareholders of the Land Company. Appellant had timely notice of that meeting and that the matter of ratifying the sale to Welsh would come up at that time. Appellant did not attend that meeting, at which the sale to Welsh was ratified. In no way did he indicate that he objected to the making of the proposed sale.

By an agreement made in April, 1914, evidenced by a letter addressed by Welsh to the plaintiff, and the latter's telegram in reply to that letter, the appellant contracted for the purchase from Welsh of the same land embraced in his contract with the Land Company on terms materially different from those stated in the last mentioned contract. The appellant did not comply with the terms of that contract or offer to do so. In January, 1915, Welsh sold all the Land Company land to the St. Charles Development Company, which had no connection whatever with the Land Company; the two corporations being composed of entirely different stockholders. Prior to April 20, 1915, the St. Charles Development Company spent large sums in draining and developing the land it had bought from Welsh, and sold portions of it, including the land embraced in the appellant's contract with the Land Company. After the appellant was informed of the just mentioned facts, on the date last mentioned he manifested to the Land Company his willingness and desire to pay the amounts called for by his three above-mentioned notes for the balance of the purchase price for the land he had contracted for, with interest thereon.

His bill in this case was filed in November, 1915. The granting of the relief prayed for was resisted on the grounds, among others relied on, that the contract sought to be specifically enforced was rescinded or canceled by agreement of the parties, and that the appellant had estopped himself to demand specific performance of that contract by the appellee.

[1] We think that the evidence adduced required the conclusion that the contract sought to be specifically enforced was abandoned or canceled by the parties. The appellant's conduct and expressions during

the period of several years between the abandonment by the Land Company of the drainage project, to which its contract with appellant made the latter a party, liable to contribute his share of the expense involved, and the resumption of work on that project by a successor financially able to carry it to completion, was inconsistent with the continued existence of the contract in question, or of an intention on the part of the appellant to comply with his obligations under the contract or to exact performance by the Land Company. That the appellant understood that that contract had ceased to be in effect long prior to the filing of the bill, and that the sale to Welsh embraced the land which was the subject of that contract, was plainly disclosed by the documentary proof of appellant's agreement to buy that land from Welsh, the Land Company's vendee. That transaction, showing, as it did, that he understood that he had to deal with Welsh to get the land for which he had formerly contracted with the Land Company, was inconsistent with the claim asserted by the bill in this case. The evidence as a whole convincingly shows that the appellant consented to and approved the sale by the Land Company of all the land, including that which was the subject of the contract in question. The contract was capable of being abandoned or rescinded by an express or implied agreement between the parties to that effect. Lasher v. Loeffler, 190 Ill. 150, 60 N. E. 85; Rogers v. Rogers, 139 Mass. 440, 1 N. E. 122; 6 R. C. L. 914, 922, 923. Of course a contract which has ceased to exist is not subject to be specifically enforced.

[2] Even if denial of the relief sought was not justifiable on the above-considered ground, that action is justifiable on the ground of estoppel. The evidence showed that in adopting and carrying out the plan or policy of selling the land as a whole, including that which was the subject of the contract with the appellant, the Land Company was apprised of and relied on the clearly manifested consent of the appellant that that course be pursued. When the Land Company offered all the land for sale, when its agent gave the option, and when the sale was made to Welsh in pursuance of his exercise of his option, the Land Company acted in reliance in good faith on expressions and conduct of the appellant manifesting his consent and desire that the land he had contracted for be included in what was so dealt with by the Land Company. Thereby the Land Company was influenced to change its position and to incur obligations as seller to a third party, which were inconsistent with those imposed upon it by its contract with the appellant. By consenting to the Land Company's sale of all the land as a whole the appellant estopped himself to demand the specific enforcement of the Land Company's contract to sell him part of that land. His acquiescence during the considerable period of time when the Land Company was undertaking to bring about such a sale, and his silence when he knew that that plan was being carried out, in reliance on his consent to that being done, had the effect of depriving him of the right to exact specific performance of the contract in question. Preston v. Preston, 95 U. S. 200, 24 L. Ed. 494; Kirk v. Hamilton, 102 U. S. 68, 26 L. Ed. 79; Swain v. Seamens, 9 Wall. 254, 19 L. Ed. 554.

271 F.—17

There is no suggestion that anything has occurred to keep the appellant, from enjoying his share as a stockholder in the benefit of the sale to Welsh, or from being restored to the position he occupied before he made the contract with the Land Company.

The decree appealed from is affirmed.