**COMMUNITY OF PRIESTS OF ST. BASIL v. BYRNE et al.   (No. 404–3751.)**

(Commission of Appeals of Texas, Section A. Nov. 15, 1923.)

1. Charities ⬤➡12—Conveyance of land for maintenance of school held gift for charitable purposes.

A conveyance by a bishop of land held in trust for a church to a community of priests for the maintenance of a school, without any consideration moving to the church or the bishop, *held* a gift for charitable purposes.

2. Deeds ⬤➡134—"Conditional limitation" defined.

A conditional limitation exists where the estate is limited until the happening of a certain event, and when such event happens the estate is terminated and reverts eo instante.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Conditional Limitation.]

3. Deeds ⬤➡155—"Condition subsequent" defined.

A condition subsequent designates a happening which gives the grantor or his heirs a right to terminate the estate, and, by re-entry, be reinvested with the title.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Condition Subsequent.]

4. Religious societies ⬤➡18—Agreement for reconveyance held a covenant, and not a condition subsequent or a conditional limitation.

A deed conveying land to a community of priests for maintenance of school *held* to vest title in the grantee without condition subsequent or conditional limitation, notwithstanding agreement for reconveyance, if at any time the community should find it could not open and maintain the school; such provision being purely a covenant, not affecting the estate granted.

5. Contracts ⬤➡316(1)—Specific performance ⬤➡7—Right to specific performance or damages may be waived.

One who has a right to specific performance can waive such right, and, if by his own act or

with his permission specific performance is made impossible, he may waive his right to proceed for damages.

**6. Religious societies ⟨key⟩18—Right to reconveyance waived by consenting to conveyance by grantee to third person.**

Where bishop and church for which he held property in trust consented to the conveyance of the property by a community of priests to which the bishop had conveyed the land for maintenance of a school pursuant to agreement providing for reconveyance if at any time the community should find it could not maintain the school, the right to demand the reconveyance on discontinuance of school was waived.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Suit by N. A. Gallagher, bishop of Galveston, for whom Christopher Byrne, bishop of Galveston, and the executors of N. A. Gallagher were substituted, against the Community of Priests of St. Basil. Judgment for plaintiffs was reversed, and the cause was remanded by the Court of Civil Appeals (236 S. W. 1016), and defendant brings error. Judgment of both courts reversed, and judgment rendered for defendants.

Sleeper, Boynton & Kendall, of Waco, for plaintiff in error.

J. D. Williamson and Allan V. McDonnell, both of Waco, for defendants in error.

GERMAN, J. In December, 1898, the Catholic parish of Waco, Tex., acquired a certain lot of land in the city of Waco, the deed thereto being taken in the name of N. A. Gallagher, bishop of Galveston. It is undisputed that the title was so taken in trust for the Catholic parish at Waco. The Catholics of Waco being desirous of opening a school for boys in that city, with the consent of Bishop Gallagher, opened negotiations with the Community of Priests of St. Basil, Toronto, Canada, a voluntary association of priests who devote themselves to the building and maintaining of educational institutions. It was finally agreed that the Community of Priests would open and maintain the school for boys in Waco, upon the condition that the property in Waco would be conveyed to them free of all incumbrances except the sum of $3,600 due as purchase money. The contract agreement which is the basis of this action contained the following provisions:

"First. That the property secured for school purposes by the Catholic Church in Waco shall be transferred to the said community subject to no other incumbrance than a debt of thirty-six hundred dollars bearing eight per cent. interest per annum.

"Second. That if at any time the said community find that it cannot open and maintain the said school the said community shall surrender and retransfer the said property to the Catholic Church in Waco, in the person of Rt.

Rev. N. A. Gallagher, bishop of Galveston, or his successor as bishop of Galveston, provided that the Catholic Church of Waco in the person of the bishop of Galveston shall at the same time refund to the Community of Priests of St. Basil, or its representatives, such portion of the original debt of thirty-six hundred dollars, bearing interest at eight per cent. per annum as the said community shall have paid."

Pursuant to the agreement a deed was executed to the Community of Priests of St. Basil in the person of two of their representatives. This deed is in regular form, with general warrant of title, and retains a vendor's lien to secure the payment of four notes representing the $3,600 unpaid purchase money. No reference is made in the deed to the prior agreement between the parties.

In 1899 the Community of Priests opened a school for boys on the property conveyed to them, and maintained the same until some time in 1902. They then acquired property in University Heights addition to the city of Waco, where they opened St. Basil's College, a school and college for boys, and maintained the same until the year 1915. In order to build this college the Community of Priests borrowed certain moneys, executing a mortgage on St. Michael's College in Toronto, and about $30,000 was expended in constructing the college at Waco. The lot first acquired by the Community of Priests at Eighth and Clay, after the school was closed, was rented for some years, and in May, 1906, with the consent of Bishop Gallagher and also with the consent of the Catholic parish at Waco, this property was sold to Isaac Simmons. After deducting certain amounts for taxes, etc., about $7,000 was sent to the provincial treasurer at Toronto, and presumably applied in part payment of the debt incurred in building St. Basil's College.

This suit was instituted by N. A. Gallagher, bishop of Galveston, in his own behalf and for his successors in office, against the Community of Priests of St. Basil, a voluntary association, its members being residents of Toronto, Canada. The purpose of the suit was to recover damages for failure to reconvey the property at Eighth and Clay, as provided in the contract of June 14, 1899, and to fix and foreclose a lien upon the property in University Heights Addition, on the theory that the money obtained from the sale of the property at Eighth and Clay had been invested in the property and improvements at University Heights. Before trial of the case Bishop Gallagher died, and Bishop Christopher Byrne, his successor, as well as his executors, became parties plaintiff in the suit.

It is undisputed that the Community of Priests of St. Basil is a voluntary association of persons for religious and charitable purposes, and not for profit, and defendants in error admit that, unless they have shown

that they are entitled in equity to subject the general property, or some particular property, of the association to their claim, by virtue of an equitable lien or trust, then, under the authority of M. E. Church South v. Clifton, 34 Tex. Civ. App. 248, 78 S. W. 732, and other cases following the rule there announced, they cannot maintain this suit.

The trial court awarded plaintiffs judgment for $4,457.42 principal and interest, decreeing that a lien existed on the property in University Heights. A bond having been executed by defendants in order to obtain release of that property from any lien, judgment was allowed on the bond for the above-named amount. The Court of Civil Appeals for the Third District, in a very carefully prepared and able opinion by Judge Brady, reversed and remanded the case, holding that the evidence was not sufficient to show an equitable lien on the property. 236 S. W. 1016. We will designate the parties as in the trial court.

Counsel have presented and learnedly argued various interesting questions, but under the view we have taken of the case it is only necessary to discuss one proposition.

[1] While the contract referred to was made prior to the execution of the deed to the Community of Priests, and the deed contains no reference to it, yet, as between the parties, we will consider the contract as though its covenants were written into the deed. That the transaction, as between the parties, was a pure gift for charitable purposes we think is beyond doubt. The Community of Priests paid no consideration to the Catholic Church or the Bishop, and, if, under the provisions of the agreement, there had been a reconveyance, the Catholic Church of Waco would have been required to refund to the Community of Priests the amount paid on the original purchase money. So the real intention on the part of the Catholic Church of Waco was to give the property to the Community of Priests to enable them to open and maintain a school for boys.

[2-4] We are unable to agree with counsel that the agreement on the part of the Community of Priests to reconvey the property under certain conditions amounted to either a condition subsequent or a conditional limitation on the estate. Briefly it may be said that a conditional limitation exists where the estate is limited until the happening of a certain event, and when same happens the estate is terminated and reverts eo instante. A condition subsequent designates a happening which gives the grantor or his heirs a right to terminate the estate, and by re-entry be reinvested with the title. For a thorough discussion of the distinction between a conditional limitation and a condition subsequent, and as incidentally bearing upon this case, we refer to the case of Daggett v. City of Fort Worth (Tex. Civ. App.) 177 S. W. 222,

and the case of Stevens v. Railway Co. (Tex. Civ. App.) 169 S. W. 644, which is also reported in (Tex. Com. App.) 212 S. W. 639. In the present case, under the deed by Bishop Gallagher to the Community of Priests the title to the property vested in the Community of Priests without condition or limitation, and the agreement to reconvey under certain conditions was purely a covenant, and in no manner affected the estate granted. The deed and the contract contain no conditions of defeasance, forfeiture, or reverter, and the policy of the law is strongly against such, where the language, as here, clearly manifests only an agreement to reconvey. Glen Rose Collegiate Inst. v. Glen Rose I. S. Dist., 58 Tex. Civ. App. 435, 125 S. W. 379 (writ denied); Kent v. Stevenson, 127 Miss. 529, 90 South. 241; Kohnke v. Kohnke (Mo. Sup.) 250 S. W. 53. It is immaterial whether the covenant was a personal one or was attached to the land, as Isaac Simmons, the purchaser, had no notice of same.

It is admitted that the opening and maintenance of the college in University Heights, after the closing of the boys school in 1902, was a compliance with the agreement to open and maintain a school for boys in the city of Waco, and there was no breach of this agreement until the closing of the college in 1915. The cause of action in favor of the Bishop or the Catholic Church of Waco was for breach of the covenant to reconvey contained in the contract of June 14, 1899, and the obligation to reconvey did not arise until 1915, when the defendants failed to maintain the school as agreed. Plaintiffs' cause of action did not arise until then, and the suit was filed in time to prevent the running of limitation. Upon a failure to maintain the school as contracted, plaintiffs had a right to demand a reconveyance upon tender of the amount paid by defendants on the vendor's lien notes, or, in the alternative, if specific performance of the agreement to reconvey could not be had, due to acts of the defendants, they had a right to sue for damages. It is worthy to be noticed, however, that the suit for damages must be for breach of contract to reconvey, and not for breach of the agreement to open and maintain a school for boys. The contract did not obligate defendants to do that, but did obligate them to reconvey the property in the event they could not open and maintain the school.

[5] It is well settled that one having a right to specific performance can waive that right, and, if by his own act, or with his permission, specific performance is made impossible, he may waive his right to proceed for damages. According to the findings of the jury, the sale of the property at Eighth and Clay by the Community of Priests to Isaac Simmons was with the consent of Bishop Gallagher and of the Catholic Church at Waco, and in addition the evidence disclos-

es that such sale was not only satisfactory to the pastor and trustees of the Catholic Church at Waco, but was consented to because they considered that the church had received ample consideration for its equity in the property. The witness Clancy testified:

"I was pastor at Waco in 1906 when the property was sold to Isaac Simmons. Father Ryan mentioned to me several times that the property at Eighth and Clay streets was a burden, and hard to take care of. There was no objection to their selling the property. On one occasion, in talking to Mr. Mistrot (one of the trustees), I mentioned the fact that the Basilian Fathers were about to dispose of the property at Eighth and Clay, and in an offhand way he said to me, 'Is there any claim of the parish on it?' I said, 'Certainly not; the parish received far more than they have bargained for,' and that ended it. A short time after that, at a meeting of the church trustees, in order to clear the atmosphere and give opportunity if there was any opposition, I brought the matter up in meeting, and told the trustees that the Basilian Fathers were arranging to sell the property at Eighth and Clay, and I said, 'we certainly have no claim there at all. We have gotten far more than we bargained for.' There was no opposition to the sale on the part of the board. I recall Mr. Hopkins said: 'The very presence of these Basilian Fathers in this community has been a great thing for the parish—has been more beneficial for the parish, much more than we could have hoped in our investment.'"

[6] When it is considered that the Catholic Church at Waco was the real beneficial owner of the property under consideration, and that the sale of this property was also with the consent of Bishop Gallagher, in whom the nominal title stood, we think there is no doubt that there was a waiver of all right to demand or require a reconveyance of the property; and this voluntary relinquishment of a right to demand the reconveyance was, of course, a waiver of any right to claim damages for failure to reconvey. It is true that at the time the property was sold the right to demand a reconveyance had not accrued; but, with the knowledge and certainty that it might accrue at any time in the future, the Bishop and the Church acquiesced in the sale of the property which they knew would make it impossible for the property to be reconveyed at any time in the future, and there was not the slightest effort to reserve to themselves the right to claim damages for breach of the agreement. While it has been difficult to find authorities relating to waiver of rights for breach of covenant to reconvey, yet the recent case of Eddy v. St. Charles Land Co. (C. C. A.) 271 Fed. 254, is almost directly in point. In that case it was held that "the acquiescence by complainant in the sale by defendant of a certain tract of land, including a part of the tract which complainant had contracted to purchase, con-

stituted an abandonment of his contract, and precluded his afterwards maintaining a suit for its specific performance." However there are many authorities pertaining to waiver of right of entry for breach of condition subsequent, and these we think are in principle applicable to this case, and sustain our conclusion. Arnold v. Scharff (Tex. Civ. App.) 210 S. W. 326; Trustees v. Patrick (Ky.) 102 S. W. 237; Francis v. Big Sandy Co., 171 Ky. 209, 188 S. W. 345; Terry v. Taylor; 143 Ark. 208, 220 S. W. 42; Jones v. McLain, 16 Tex. Civ. App. 305, 41 S. W. 714.

Plaintiffs having no cause of action for damages, and consequently no lien upon the property of defendants, they are not entitled to recover (M. E. Church South v. Clifton, supra), and we therefore recommend that the judgment of the Court of Civil Appeals and of the district court be reversed, and judgment rendered for defendants (plaintiffs in error here).

CURETON, C. J. Judgments of the District Court and Court of Civil Appeals both reversed, and judgment rendered for the plaintiff in error.