**CITY OF HOUSTON, Appellant,**

v.

**LAWYERS TRUST COMPANY, Appellee.**

No. 3859.

Court of Civil Appeals of Texas.

Waco.

June 1, 1961.

Rehearing Denied June 29, 1961.

R. H. Burks, Homer T. Bouldin, Houston, for appellant.

Red, Kemp & Fahey, Houston, J. R. Lewis, Tyler, for appellee.

TIREY, Justice.

This action is one in trespass to try title. The City of Houston filed a plea of not guilty. At the close of plaintiff's evidence the City presented its motion for instructed verdict and again at the conclusion of all the evidence, and it was overruled. The court submitted two issues to the jury, they are, absent the burden of proof clause, substantially: (1) Do you find that the land involved in this lawsuit had ceased to be used for park purposes on or after August 12, 1951? to which the jury answered: "We do." (2) Do you find that the land and property in question was abandoned as a public park on or after August 12, 1951? to which the jury answered: "We do." The City seasonably filed its motion to disregard and set aside the answers of the jury to the issues and also its motion for judgment non obstante veredicto, each of which was overruled, and the court entered judgment for appellee. The court granted separate motions of plaintiff and defendant to instruct a verdict against defendant, Mrs. Anderson, as administratrix of the estate of R. N. Ferguson, deceased, and there is no exception or appeal from the order. The City seasonably filed its motion for a new trial, and it being overruled perfected its appeal to the Houston court, and the cause is here on transfer.

Point one is to the effect that the court erred in overruling the City's motion for instructed verdict because: (a) There is no evidence; (b) Insufficient evidence; (c) That neither the lumber company nor its assigns gave notices of re-entry; (d) That the lumber company waived any conditional limitation, or condition subsequent, or covenant for failure of the city to use the land for park purposes, and had no right to re-enter the property, and the court erred in holding that the dedication for park purposes had terminated, and decreeing that the property revert to the lumber company or to appellee.

Point two is to the effect that the court erred in overruling appellant's motion for instructed verdict because the evidence is positive and uncontradicted that the lumber company dedicated the land for park purposes and filed for record such instrument of dedication and a dedication map showing the land that was dedicated for park purposes, and because the company subsequently sold lots in the subdivision whereby said dedication became final and irrevocable.

Three and four are to the effect that the court erred in overruling the City's motion for instructed verdict because the evidence

is undisputed that the lumber company represented to prospective buyers of land in the subdivision by brochures that the land in question had been dedicated for park purposes and thereby induced the people to buy land in that area and that said dedication became irrevocable as a matter of law; that appellee has no right to judgment that said easement for public park purposes is forfeited or has been forfeited or that said easement has terminated or has reverted to appellee.

Points 30, 31, 32, 33, 34 and 35 are to the effect that the court erred in overruling the City's motion for judgment non obstante veredicto, because there is no evidence in the record to justify the submission of issues one and two, or to support affirmative answers to either of such issues; that the evidence is insufficient to justify the submission of either of such issues or to sustain an affirmative answer of the jury to either of same; that the answer of the jury to each of the issues is so against the great weight and preponderance of the evidence as to be greatly wrong and unjust.

A statement is necessary. The dedication of the property for park purposes was by deed of date August 12, 1926. At the time this deed was filed for record this property was outside of the city limits. We quote the pertinent recital in the deed:

> " * * * has platted the same into lots and blocks, to be known as 'Garden Villas', and subject to the revervations hereinafter stated, does by these presents dedicate unto the public for street and alley purposes all streets and alleys in said subdivision and also for the purposes all streets and alleys in said subdivision and also for the purposes indicated, all parks, civic centers, school sites and community places, as shown or indicated on the map or plat thereof, a copy of which is attached hereto and filed for record in the office of the County Clerk of Harris County, Texas. * * * "If or after the expiration of twenty-five (25) years from date here-

of, any tract or tracts dedicated for parks, civic centers, schools or community places as shown on said plat, cease to be used for that purpose or purposes indicated thereon, the fee title to any such tract or tracts shall vest and be in W. T. Carter Lumber & Building Company."

The evidence is without dispute that Lot 1 of Garden Villas was adequately and highly improved for park purposes, shortly after the dedication, and it was widely and much used by the public generally in Harris County, and in the city for playground, picnics, church socials, and other social events shortly after the dedication and improvement of the property for park purposes, and this park remained in great use for many years. Sometime during the 1930's (the exact time not shown) the park began to be used by people at night in such way that it was objectionable to the residents in that area and that resulted in the lumber company placing a Mr. Ferguson on the property for policing purposes. Ferguson also had other duties to perform in connection with the control of the water and sewer system serving the area, and he was permitted to move on to the property and occupy what was designated the recreation house. Ferguson was not there too long until he began to be arbitrary and contentious with the people who desired to use the park; that he kept vicious dogs; that he kept a horse in the park; that he maintained a garden and his attitude was such that by the middle 1940's he had interfered with the free use of the park to such an extent that the record does not recount any use of the same for park purposes after 1944.

The record shows that the Carter Lumber Company conveyed this property to the Carter Investment Company, Trustee, in 1947, and thereafter, in 1947, the Carter Lumber Company was dissolved; the investment company conveyed the property to appellee on October 15, 1957, and the appellee filed this suit in trespass to try title

on February 18, 1959. It is true that Mr. Randolph testified to the effect that he talked to the county commissioner of the precinct in which the subdivision was located concerning spending money to help maintain the park, but that he got no response. Needless to say this would have no effect upon the rights of the City of Houston; that the sale of all the lots in the subdivision had been approximately completed before the Carter Lumber Company was dissolved in 1947.

The City, by ordinance dated December 30, 1949, extended its limits so as to annex the property, and thereafter, in March 1950, by ordinance, the city assumed the responsibility of maintaining park sites and civic centers in the subdivision. We quote Section 1 thereof:

"Section 1: The City of Houston hereby accepts the dedication of the park sites and civic center as shown on said map which is attached hereto, marked Exhibit 'A', and assumes the responsibility for the upkeep, care, maintenance and supervision which the City Council or someone thereunto duly authorized may find to be necessary or proper."

In January 1950, the acting Director of Parks and Recreation of the City recommended that:

"* * * the City spend about $3,000.00 on the third plot for grading, walks and a few pieces of outside play apparatus which I believe will meet the requirements, contingent of course upon your approval. I made no promises or commitments at the meeting."

On February 9, 1950, the City Secretary wrote the Acting Director of Parks and Recreation, as follows:

"Attached is copy of your letter of January 31, 1950, on request of Garden Villas Community Association, relative to three park sites in Garden Villas, which has been approved by Mayor Holcombe.

"Mayor Holcombe requests that you handle this matter to completion and see that the City gets the deeds for the park sites."

There was tendered in evidence a letter to the Mayor dated October 26, 1956, entitled "Request for maintenance on property at intersection of Santa Fe and Haywood Streets," (property in question) and this letter further stated that the Legal Department was requested on July 24, 1956, to give a legal opinion as to the status and ownership of the property that was known as Garden Villas Park:

"There has been some question as to whether or not it's city park property, and until this fact is known we would hesitate to provide any maintenance. We will, therefore, be glad to provide such maintenance as is necessary when we receive this information and opinion from the Legal Department."

A letter from the Department dated September 6, 1957, stated:

"I believe the area that you refer to has been in the past questionable as to whether or not it is a dedicated park. There is at present a relative on this property and on several occasions when we had attempted to clear this he had ordered us off and strongly claims that the property does not belong to the City. As I have been told, the former owners donated this property to the County for park purposes with some provision that he would be allowed to live in the existing house for life. Since that time, of course, this area has been annexed by the City but he has never relinquished his rights and considered this City or public property.

"We will be glad to check this further with the Legal Department to determine whether the property is legally public property and dedicated and useful for park purposes."

We are of the view that the foregoing testimony tendered by appellee brings this

cause within the Rule announced by this court in J. R. Watkins Co. v. King, Tex. Civ.App., 83 S.W.2d 405–407, n. w. h., Points 2 and 3; Welch Veterinary Supply Co. v. Martin, Tex.Civ.App., 313 S.W.2d 111, and authorities collated on page 119.

Mr. Moser, former Superintendent of Recreation for the City from 1945 until 1955 testified to the effect that the property was not maintained as a part of the city park system, and that it was grown up in weeds. Mr. Haycock, Director of Parks and Recreation for the City testified that there had been no development or improvement whatsoever on the property; however, it is without dispute that during this same period of time the City was expending sizable sums in maintenance and construction on park lots Nos. 2 and 3 in Garden Villas. This record also shows that prior to April 1958 (exact time not shown) Mr. George Red, Attorney for the lumber company, requested the City to re-convey to the Carter Lumber Company this tract (lot 1) and three other tracts in question in Garden Villas, on the claim that title had reverted to the Carter Lumber Company and its assigns. The motion was passed on April 2, 1958 granting the request as to lot 1, but denied as to the other three tracts. The City Attorney did not prepare this deed and the foregoing action was rescinded by the Council on the 25th day of February, 1959. (We think that the foregoing request made by Mr. Red is the first and only time that the lumber company and/or its successors and assigns made any claim that this property had reverted to the lumber company and its assigns for nonuser for park purposes). It is true that Mr. Randolph testified that in 1954 he spent $1,600 in repairing the recreation building on the property in which Mr. Ferguson lived. He testified specifically: "Q. That was done at your expense? A. Yes, Sir." In 1954 the Carter Lumber Company had no title to the property, its title having passed to the Carter Investment Company, and it is not shown who Mr. Randolph was acting for when he voluntarily went out and made

this expenditure on the property, but regardless of whether he was representing himself or the Carter Investment Company, we do not think that this testimony is any evidence that the City had abandoned the property for park purposes. As we understand the record Mr. Randolph was a mere volunteer in making this expenditure. Mr. Randolph testified to the effect that when the Carter Lumber Company placed Mr. Ferguson on the property in the 30's he was paid a salary, and that when they sold the water and sewerage plants sometime in 1947 that the salary to Mr. Ferguson was cut off. It is also without dispute that Ferguson was in continuous possession of the property from the time that he was placed there by the lumber company, and that in 1957 (the exact date not shown) Mr. Randolph took a tenancy agreement out to Mr. Ferguson to sign and he refused to execute the tenancy agreement acknowledging his tenancy of the property, and that Mr. Ferguson was on the property and in possession thereof at the time appellee filed its suit.

■■■■ Going back to appellant's Point 1, is the evidence sufficient to tender the issue that the property had been abandoned as a park by the city on August 12, 1951? We are of the view that the evidence is insufficient to tender the issue of abandonment against the city at any time. At most, the evidence does no more than arouse a mere surmise or suspicion, Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059. It is true that the evidence is without dispute that the property had ceased to be used for park purposes since about 1944, but the Carter Lumber Company made no complaint to anyone about the nonuser of the property for park purposes. The City did not acquire the property by annexation until December 30th, 1949, and did not assume any obligation with reference to the upkeep and maintenance of the property for park purposes until March 30, 1950. We have previously quoted Section 1 of that ordinance; however, the record shows that on November 15, 1950, the City passed an ordinance

which appropriated $3,000 for the purpose of making improvements to this and other park property, and we think such ordinance is conclusive of the city's intention not to abandon the land for park purposes at that time, although the evidence shows that such property had grown up in weeds. Moreover, this record conclusively shows that Ferguson refused to let the city employees come on to the property and that created in the minds of the agents and representatives of the City that there was some question as to title to the property, and as to the City's rights to take it over and maintain it.. Moreover, the record shows that Ferguson not only refused to let the City and its agents and representatives come upon the property, but he also refused to execute a tenancy agreement acknowledging that he was a tenant, and he maintained this attitude consistently and lived on the property continuously from the time that he was placed thereon by the lumber company and when the appellee filed its suit in trespass to try title, he contested this suit and the suit was contested by the administratrix of his estate. In so far as this record goes the City of Houston never at any time had free access to the property in order to improve or maintain the same for park purposes. The record is without dispute that after the city assumed the responsibility for looking after the park property in this area that it appropriated large sums of money from the Park Bond Fund for the improvement and maintenance on Parks Nos. 2 and 3 in Garden Villas. For example an appropriation of $13,600 was made in November 1950, and $1,000 thereof was provided for Park No. 3 in Garden Villas. Again on November 15, 1950, an ordinance was passed appropriating $4,000 out of the Park Bond Fund to pay for playground apparatus, water service lines and miscellaneous improvements of Garden Villas Park. On November 18, 1953, $1,000 was appropriated by ordinance to Garden Villas No. 2 Park. On the 13th day of November 1957, a city ordinance was passed appropriating the sum of $35,000 out of the Park Bond Fund to pay for construction costs of concrete walks for certain parks, and among those mentioned are "Garden Villas Nos. 1 and 2." In May 1958, an ordinance was passed providing for the expenditure of $4,500 out of the Park and Recreation Bond Fund to pay the architectural fee covering preparation of plans and specifications for the recreation center to be built in Garden Villas Park. On August 19, 1958, an ordinance was passed appropriating the sum of $700 out of the Park Bond Fund to pay for soil test and engineering analysis in order that the design could be made of the foundation for a recreation building in Garden Villas Park. On October 7, 1958 an ordinance was passed appropriating $8,000 out of the Park Bond Fund to pay costs for providing electrical service in various city parks, among those mentioned was Garden Villas Park. On October 7, 1958 an ordinance was duly passed appropriating $95,-000 out of the Park Bond Fund to pay the cost of construction of a recreation building in Garden Villas Park. We are of the view that the foregoing action of the City with reference to parks and civic centers in this area conclusively shows that the City had not abandoned the property that it had acquired by virtue of the extension of its city limits, and by virtue of the obligation it assumed in the ordinance passed March 30, 1950. We recognize that the question of abandonment by the City is one of fact to be determined by all the evidence and surrounding facts and circumstances in this case (See City of Anson v. Arnett et al., Tex.Civ.App., 250 S.W.2d 450, at page 454, n. r. e.) but our view of the record here is that there is at most only a scintilla of evidence, if any, of abandonment on the part of the City. The Rule in Texas is:

" 'Except where statutes otherwise provide, mere negative nonuser, or delay in beginning use, does not ordinarily constitute abandonment; nor is the use or improvement of only part of the dedicated property an abandonment of the balance.' "
26 C.J.S. Dedication § 63b, p. 554. See also Adams v. Rowles, 149 Tex. 52, 228 S.W.2d

849, 852, opinion by Supreme Court. In fact, we are inclined to the view that the City was prevented from taking the property into its possession and exercising control and dominion thereof, due to the fact that the lumber company had placed Ferguson in possession and had permitted him to maintain such control and dominion thereof that it required a suit in trespass to try title to dislodge him from his possession and asserted ownership. Surely the lumber company and its successors and assigns are not entitled to take advantage of the wrongful conduct of its agent whom it lawfully placed in possession of this property. The record shows that Carter Lumber Company was dissolved prior to the time that the City extended its limits and annexed this property in 1949. There is no evidence that the Carter Investment Company made any re-entry of said property prior to the time that it conveyed the property to the appellee in October 1957. It is true that Mr. Red made a request for the lumber company and its successors and assigns for the property to be reconveyed to the lumber company and its successors and assigns, but such request is no evidence of re-entry, and while the request was granted in part, it was subsequently set aside and did not become effective. It is likewise true that appellee made no re-entry or attempt to do so prior to the time it filed its suit on February 18, 1959. Therefore, we are of the view that the record and all the foregoing facts and circumstances show conclusively that no re-entry was made by the dedicator, nor its successors or assigns; that no action was taken to assert a claimed forfeiture prior to the filing of this suit. We are of the further view that under all the undisputed factual situation in this record that Carter Lumber Company waived its right to claim a forfeiture, and that it and appellee are estopped to claim that there was a forfeiture or that the land had reverted back to Carter Lumber Company or to appellee, or to claim that the property had been abandoned by the City for park purposes.

This view requires that the cause be reversed and rendered. If we should be mistaken in holding that there is only a scintilla of evidence to tender the issue of abandonment of the property as a public park by the City, and could reach the point of insufficiency or the great weight and preponderance of the evidence, these points would be sustained under the doctrine stated in Texas Law Review, April 1960, Vol. 38, No. 4, Art. "No Evidence" and "Insufficient Evidence", by Justice Calvert of the Supreme Court, and authorities there cited. See also In re King's Estate, 150 Tex. 662, 244 S.W.2d 660.

■ Since the City of Houston entered a plea of not guilty, it had the right to present any defense except that of limitation. See Rule 789, Texas Rules of Civil Procedure; Keller v. Miller, Tex.Civ.App., 207 S.W.2d 684, n. r. e.; Odom v. Empire Bldg., & Loan Association, Tex.Civ.App., 134 S. W.2d 1053, W. D. J. C.; Huddleston v. Jackson, Tex.Civ.App., 322 S.W.2d 23, n. r. e.

■ We are of the further view that Carter Lumber Company having waived any right of reversion which it may have had in the subject property, it follows that appellee had no right to maintain its suit, and has no right to judgment for the title of the property against the City of Houston. See Houston & T. C. R. Co. v. Ennis-Calvert Compress Company, 23 Tex.Civ. App. 441, 56 S.W. 367, writ ref. See also Jones v. McLain, 16 Tex.Civ.App. 305, 41 S.W. 714; Tickner v. Luse, Tex.Civ.App., 220 S.W. 578, err. ref.; 26 C.J.S. Deeds § 158, page 1075, also § 158d, p. 1076; 36 Texas Jurisprudence "Remainders and Reversions," 875, 876, Secs. 4 and 5; Skipper v. Davis, Tex.Civ.App., 59 S.W.2d 454; 12 Texas Jur., "Covenants and Conditions", p. 137, Sec. 90, also page 139, Sec. 91.

■ We are of the further view that the recital in the deed created a condition subsequent under the Rule in Texas. In Com-

munity of Priests of St. Basil v. Byrne, Tex.Com.App., 255 S.W. 601, 603, we find this definition:

"Briefly it may be said that a conditional limitation exists where the estate is limited until the happening of a certain event, and when same happens the estate is terminated and reverts eo instante. A condition subsequent designates a happening which gives the grantor or his heirs a right to terminate the estate, and by re-entry be reinvested with the title."

Stevens v. Galveston, H. & S. A. Ry. Co., Tex.Com.App., 212 S.W. 639. In Gulf, C. & S. F. Ry. Co. v. Dunman, 74 Tex. 265, 11 S.W. 1094, 1095, our Supreme Court made this statement:

"The title to an estate, liable to be defeated by the non-performance of a condition subsequent, remains in the grantee until divested by the entry of the grantor."

■ We have given much consideration to appellant's position that the method used by the Carter Lumber Company in advertising the lots for sale in this subdivision constituted a second dedication, and by reason thereof the dedication of the parks, etc., became irrevocable as a matter of law. We overrule this contention. Our view is that the recital in the deed distinguishes this cause from the Rule announced and followed by our Supreme Court in Oswald v. Grenet, 22 Tex. 94; City of Corsicana v. Zorn, 97 Tex. 317, 78 S.W. 924, and Adams v. Rowles, 149 Tex. 52, 228 S.W.2d 849, supra. See also Griffith v. Allison, 128 Tex. 86, 96 S.W.2d 74 (Com. of App. Opinion adopted).

Since we are of the view that the issue of abandonment was not tendered against the City of Houston, appellant's motion for instructed verdict should have been sustained, and since the court overruled this motion, the court should have granted the city's motion for judgment non obstante veredicto. This view requires that the cause

be reversed and rendered. Since we are of the view that there is no evidence of abandonment on the part of the City, and since we are of the further view that the recital in the deed created a condition subsequent, and that there was no re-entry, many of appellant's points pass out of the case. Each of the other points tendered by appellant have been considered, and each is overruled.

Accordingly, the judgment of the lower court is reversed and rendered.