## W. F. WHITE LAND CO. v. CHRISTENSON et al. (No. 11982.)

Court of Civil Appeals of Texas. Fort Worth. Dec. 15, 1928.

Rehearing Denied Jan. 26, 1929.

Bryan, Stone, Wade & Agerton, of Fort Worth, for appellant.

P. Walter Brown, of Fort Worth (Spafford & Jackson and Thomas G. Burke, all of Dallas, of counsel), for appellees.

DUNKLIN, J. The W. F. White Land Company has prosecuted this appeal from a judgment of the district court denying it the right to forfeit title of C. F. Christenson and wife, Lula Christenson, to lot 3 in block 1, situated in what is known as Scenery Hill addition to the city of Fort Worth, all of which addition was originally owned by the White Land Company, having been taken out of a tract of land then owned by the White Land Company and the plat being duly recorded in the deed records of Tarrant county.

The record shows that after the subdivision was platted, the land company, on September 20, 1924, sold lot 3 in block 1 and some 16 other lots in the same addition to P. L. Jones, who later sold lot 3 in block 1 to C. F. Christenson, and thereafter Christenson, joined by his wife, Lula Christenson, borrowed from the Fidelity Building & Loan Association the sum of $3,500, secured by a mortgage lien on the lot. Thereafter Christenson and wife gave to W. F. Suttles a mechanic's lien upon the property for improvements, which were erected on the lot. The loan company, Suttles, and Jones were all made parties defendants. There were also other parties made defendants, but it is not necessary to mention them, since issues as to those defendants are not involved on this appeal.

The deed executed by the land company to P. L. Jones contained the following provisions:

"1. No building shall be erected on said premises except a private dwelling house and outbuilding thereof, and no building erected thereon shall at any time be used except for such purposes."

"4. If said party of the second part, his heirs or assigns shall build a residence on said lots the residence so built on lots fronting east on Oakland Avenue shall not cost less than five thousand ($5,000.00) dollars; those built on lots fronting west on Martel Avenue shall not cost less than forty-five hundred ($4,500.00) dollars; those fronting east on Martel Avenue shall not cost less than four thousand ($4,000.00) dollars.

"5. No residence shall be erected on lots fronting east on Oakland Avenue nearer than fifty feet to front curb line. No house shall be erected fronting on Martel Avenue nearer than fifty feet to the curb line. No house shall be erected on Oakland Avenue except of brick, brick veneer, stone or stucco construction.

"In case the said grantee, or his heirs, executors, administrators or assigns, shall ever violate any one of said conditions contained herein and made a part of the covenants of this deed, the said land and all improvements therein shall immediately revert to and become the property of the grantor herein and its successors or assigns, and it shall be lawful for said grantor and its successors or assigns to re-enter said premises as in its first and former estate: and

"The said W. F. White Land Company does hereby bind itself and its successors and assigns to warrant and forever defend, all and singular the said P. L. Jones, his heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof.

"The said grantee herein, for himself and his heirs, executors, administrators and assigns, does agree with W. F. White Land Company and its successors that the conditions herein contained are intended to and shall run with the land, and that should the grantee, his heirs, executors, administrators or assigns, or any person claiming under him, violate any of the foregoing covenants, then W. F. White Land Company, or its successors, or any owner of any lot conveyed herein, shall have the right to enjoin the doing of same, and in the event the violation has already taken place, that then such remedy shall extend to the removal of the improvements placed on said premises in violation of any covenant herein."

The record shows that the lot in controversy fronts east on Oakland avenue in said addition. It further shows that after the Christensons purchased the lot they erected a dwelling thereon, and the plaintiff's suit was based upon allegations that the residence so constructed cost less than $5,000, and that it was erected less than 50 feet from the front curb line of the street, and a right of forfeiture was based on allegations that by reason thereof the restrictions in the deed had been violated and the title to the lots with improvements thereon had been forfeited to the land company.

There was an alternative prayer in plaintiff's petition that in the event it should be determined that plaintiff did not have the right to a forfeiture of the entire title, it should then be awarded a mandatory injunction requiring the defendants to remove the house that had been erected on the lot.

The case was tried before a jury, and judgment denying plaintiff any right of recovery was upon a verdict in favor of defendants rendered in obedience to a peremptory instruction therefor from the trial court.

No direct testimony was offered to show what Christenson actually paid out for the construction of the house, neither he nor the

contractor being called as a witness for either side, but plaintiff introduced witnesses who gave their opinions as to what it should have cost to build the house at the time it was erected. According to the testimony of W. B. Martel, who had been engaged in construction work of buildings for some 12 years, the house could have been constructed at the time it was built for the sum of $4,008.95. However, he further testified that the house had already been constructed when he made his estimate. The estimate was made only a few days before the trial, at which time he made an inspection of the house for the purpose of giving his estimate. He further testified that he did not go upon the roof to examine it, and other material used in the construction thereof had been covered up, so he could not determine their particular character of course. Nor could he tell how many brick piers had been put under the house, as he could not get under the house to examine them. In making his estimate, he itemized the cost of labor of the carpenters, and in that connection said: "The pay given to carpenters depends upon the class of carpenters you get. Carpenters get from four to nine dollars a day. As to whether I mean that it would take three four dollar carpenters or three nine dollar carpenters to build this house in twenty-five days. I will say that also depends a good deal; there is no two carpenters that will do the same amount of work, even though you pay them the same. But I figure that three good carpenters could build this house in twenty-five working days by taking the average of what carpenters will do. * * * These three carpenters would not get $27 a day unless they were union men."

George Williams, who also was a building contractor and who lived about 200 feet distant from the Christensons' lot at the time the latter's residence was constructed, testified at length to observations made by him as to the kinds of material and workmanship employed while the building was in course of construction, and also to examinations made by him before the trial along the same lines. He gave estimates as to the market price of material and labor at the time the building was constructed, with all of which he said he was familiar. After giving those details, his estimate was that the total cost of the house at the time it was built was $3,417.15. He further testified that while the house was being constructed he protested to the White Land Company of the inferior quality of the house. Plaintiff also introduced in evidence a building contract executed by C. F. Christenson and wife, parties of the first part, and W. E. Suttles, party of the second part, by the terms of which Suttles agreed to furnish all the labor and materials for and to construct, erect, and complete the house in a good workmanlike manner in accordance with the plans and specifications agreed upon, which were attached to the contract, for a total of $4,000, evidenced by a promissory note of Christenson and wife in that sum, secured by mechanic's lien upon the lot and improvements to be erected thereon. The improvements to be erected consisted of one five-room brick veneer residence, with bath and sleeping porch, also one five-box garage and barn combined, and 80 yards of chicken fence. Plaintiff also introduced in evidence a transfer from Suttles to the Fidelity Building & Loan Association, defendant, of the promissory note executed by Christenson and wife for those improvements and the lien given to secure the same.

The defendants introduced no witnesses to rebut the evidence introduced by the plaintiff and referred to above.

It is our conclusion that the evidence referred to above was sufficient, prima facie, to warrant a finding by the jury that the house constructed on the lot by Christenson did not cost $5,000, as required by the deed to P. L. Jones, executed by the plaintiff company, and under which deed the Christensons claimed title. Especially is this true in the absence of any testimony to the contrary from the defendants when presumably the same was peculiarly within their knowledge. And we believe it was error for the court to take that issue from the jury. Harpold v. Moss, 101 Tex. 540, 109 S. W. 928.

However, we do not believe that the evidence introduced was sufficient to warrant a finding that the house was built nearer than 50 feet from the curb. The evidence was without controversy that when built it was at least 50 feet from the curb and that later the street was widened by the city. It would be unreasonable to say that plaintiff could take advantage of the fact that after the widening of the street the house was nearer than 50 feet of the curb.

It is our conclusion that what purported to be conditions subsequent in the deed are merely building restrictions denoting covenants, for the violation of which injunctive relief was provided in the instrument. Daggett v. City of Fort Worth (Tex. Civ. App.) 177 S. W. 222, and authorities there cited; 8 R. C. L. p. 1110, § 171, and authorities there cited.

It was said by Chief Justice Phillips, in Decker v. Kirlicks, 110 Tex. 90, 216 S. W. 385, that: "Forfeitures are harsh and punitive in their operation. They are not favored by the law, and ought not to be. The authority to forfeit a vested right or estate should not rest in provisions whose meaning is uncertain and obscure. It should be found only in language which is plain and clear—whose unequivocal character may render its exercise fair and rightful." To the same effect are the following decisions: Grubb v. McAfee, 109 Tex. 527, 212 S. W. 464; Carey v. Texas Pac. Coal & Oil Co. (Tex. Civ. App.) 237 S. W. 309, writ refused.

In South Texas Telephone Co. v. Huntington, 104 Tex. 350, 136 S. W. 1053, it is said: "To constitute a condition subsequent upon which a forfeiture may be declared because of a failure of its performance, the language must be clear and the condition must be created by express terms, or by clear implication, and it must be strictly construed. Southard v. New Jersey C. R. Co., 2 Dutch [26 N. J. Law], 13–20. If there be doubt as to the meaning of the language used in this instrument, then it must be construed to be a covenant, for the law will not permit a liberal construction to be placed upon its terms in order to cause the forfeiture of a right secured by the instrument."

Other authorities of like import might be cited. Applying those rules of construction to the deed from the White Land Company to P. L. Jones, it is our conclusion that the plaintiff did not have the right of forfeiture of title for a violation of restrictions therein contained. While it is true that the right of forfeiture of title is expressly given in the fifth paragraph of the deed, yet in the concluding portion of that instrument it is expressly stated that, should the grantee or his assigns or any other claiming under him "violate any of the foregoing covenants," then the "W. F. White Land Company or its successors or any owner of any lot conveyed herein shall have the right to enjoin the doing of same, and in the event the violation has already taken place, that then such remedy shall extend to the removal of the improvements placed on said premises in violation of any covenant herein."

It cannot be doubted that by that language the grantor was given a remedy for a violation of any of the restrictions contained in the deed, which are there designated as covenants. In view of the right so given, the grantor is in no position to claim the harsher remedy of forfeiture of title. Furthermore, in his pleadings plaintiff claimed that right in the event a forfeiture of title should not be awarded him. If the restrictions in the deed were violated, then under the plain and unambiguous terms of the instrument, plaintiff would have the right to that relief, construing the restrictions as covenants only as insisted by the appellees.

Furthermore, if the house already erected should be removed, the general purpose of the White Land Company in embodying those restrictions in the deed will be accomplished without the necessity of forfeiture of title.

In view of the evidence offered by the plaintiff to show that the house constructed upon the lot in question did not cost $5,000, and therefore the building of it was in violation of one of the restrictions in the deed, the judgment of the trial court will be reversed, and the cause remanded for another trial to determine whether or not plaintiff is entitled to the removal of the house for a violation of the restrictions already noted; but not for the purpose of enforcing a forfeiture of title to the property. A trial of that issue, of course, will involve also a determination of the special defenses urged thereto, of such as waiver, estoppel, etc.