[Civ. No. 8277. First Appellate District, Division One.—April 15, 1932.]

GEO. H. LETTEAU et al., Appellants, v. PAULINE ELLIS et al., Respondents.

Moote & Longcroft for Appellants.

Afue McDowell for Respondents.

PARKER, J., *pro tem.*—This action was to have a forfeiture declared after breach of condition. The case may be better understood from a general summary of the facts.

About the year 1905 Lulu N. Letteau was the owner of real property in the city of Los Angeles, which she subdivided into three blocks of sixty lots each and placed upon the market under the name of "The Entwistle Tract". In the deeds by which the great majority of the lots were sold the following clause appears: " . . . said lot shall never at any time be sold rented to or occupied by any person of Negro descent; and that a violation of any of said conditions shall work a forfeiture of title thereof to said party of the first part, their successors or assigns". This provision was omitted from the deeds to nine lots, though contained in the deed to the lot here involved.

In the year 1907, by a deed containing the provision quoted and duly recorded in the recorder's office of the county of Los Angeles, lot fifty-one (51) of block B in said tract was conveyed to one Kershaw, from whom, by a series of conveyances, the defendant, Pauline Ellis, traces her title. In the year 1912 Lulu N. Letteau died, leaving as her heirs the plaintiffs, to whom all of her estate was distributed. Pauline Ellis, herself a person of Negro descent, allowed the property to be occupied by persons of Negro descent, and plaintiffs seek to have title to the property declared in them by reason of the claimed breach of the conditions hereinbefore set forth. The action was commenced in July, 1926. The facts as contained in the foregoing statement are not denied; at least, a full and fair consideration of the defendants' main position permits acceptance thereof. Defendants contend that conditions have so far changed since the imposition of the conditions as to preclude the granting of the relief sought.

The findings of the trial court on the question are not challenged, and are substantially as follows: That, by reasons other than the breach of said condition as to said lot, the conditions of the locality of said lot and tract have, since the original deed, changed so fundamentally and radically that neither said lot nor said tract is any longer suitable for use with restrictions against occupancy by persons of Negro descent, or for the purposes which the original grantor sought to establish or maintain by said conditions; that, when the tract was originally laid out, the territory embraced therein and the adjacent territory was sparsely settled and close to the then city limits, and occupied by Caucasians only; that at that time the comparatively few Negroes in Los Angeles lived in what was then known as the "Negro District", about five miles from this tract; that in 1909 persons of Negro descent commenced buying, owning, controlling and occupying land all around the tract, and from that time persons of Negro descent have occupied lands within the tract, and from time to time more and more of said persons of Negro descent have purchased and taken occupancy of land in said tract and in the surrounding tracts until in the year 1926 said tract and the locality in which it is situate has become and now is very thickly settled with persons of Negro descent, and such occupancy has been by and with the consent and knowledge and without objection from plaintiffs; that some of these Negro occupants have made purchase price payments to plaintiffs on account of purchases of lots in said tract; that since said alleged restrictions and conditions were so attempted to be established, said tract, lot and locality have been and now are occupied almost exclusively by Negroes; that in very close proximity to said lot and tract, there are and for over ten years have been churches, schools, business houses, apartment houses, flat buildings and other kinds of premises, owned and occupied by Negroes in very great numbers; that two blocks from said lot there is under construction the largest Negro-owned hotel in the western part of the United States, which hotel, with the stores beneath, will be used entirely by Negroes; that Negroes do now, and for over ten years last past, have been used to congregate, walk, drive, pass and appear at all hours of the day and night, openly, publicly, continuously, notoriously, constantly and extremely noticeable, on the side-

walks, roads, streets, in the houses and all about said lot, tract and locality in usual, ordinary activities of a residential district, where it was and is now commonly known by the public generally that the Negroes reside and live; that as results thereof, nearly all persons not of Negro descent have moved out of said tract and locality and have been replaced by Negroes; that most of the real estate in said tract and locality is now offered for sale and occupancy to Negroes, who are the only ones easily available; that said tract and locality are included within the "Negro District" and occupied almost exclusively by Negroes; that public authorities and the public generally have taken cognizance of and have submitted to this enlargement of the said Negro district and for the past ten years have, by common usage and consent, included in the so-called "Negro District" all of the land of this tract, and included nearby tracts located further from the original Negro district than the Entwistle tract.

From these findings the court below concluded that plaintiffs had waived their rights to enforce any of the conditions or forfeitures mentioned in this action, and further concluded that it would be extremely harsh and inequitable to enforce said forfeiture of any of said conditions or restrictions as to said lot 51. Judgment thereupon went for the defendants.

At the outset, reference may be had to the following cases: *Los Angeles Investment Co.* v. *Gary,* 181 Cal. 680 [9 A. L. R. 115, 186 Pac. 596]; *Janss Investment Co.* v. *Walden,* 196 Cal. 753 [239 Pac. 34]; *Wayt* v. *Patee,* 205 Cal. 46 [269 Pac. 660]. These cases hold that the provision in a contract for the sale of real property, that no part of said property shall ever be used or occupied by any person who is not of the white or Caucasian race, is constitutional and valid. Respondents readily concede this to be the law of this jurisdiction. But, argue respondents, the found changed conditions make it unjust and inequitable to enforce the conditions. There is much authority in support of respondents' position. (*Downs* v. *Kroeger,* 200 Cal. 743 [254 Pac. 1101]; *Hess* v. *Country Club Park et al.,* 213 Cal. 613 [2 Pac. (2d) 782]; *Hurd* v. *Albert,* 214 Cal. 15 [76 A. L. R. 1348, 3 Pac. (2d) 545].) These cases deal with restrictive covenants and conditions limiting the use of real estate, the particular restrictions being as to the maintenance of the property as

residential. The holding in each case is that where there has been a change in the uses to which property in the neighborhood is being put, so that such property is no longer residence property, it would be unjust, oppressive and inequitable to give effect to the restrictions, if such change has resulted from causes other than their breach. A reference to these cases suffices. The subject is exhaustively covered and leaves no further ground of discussion.

Appellants, however, argue with much plausibility that a so-called race restriction or condition against use by a race other than white is not within either the spirit or the letter of the doctrine announced in the cited cases. Distinctions of some nicety are drawn between conditions as such, and covenants and restrictions as to use. Under the rule of *Los Angeles Investment Co.* v. *Gary, supra,* the validity of the condition rests upon the use and occupancy alone. In the case of *Koehler* v. *Rowland,* 275 Mo. 573 [9 A. L. R. 107, 205 S. W. 217, 221], which case involved race restrictions, the court adopts the rule of changing conditions and says: "It is true that where circumstances are changed, owing to the natural growth of a city or of the present use of a whole neighborhood, so that the purpose of a restriction in a conveyance no longer can be accomplished, and it would be oppressive and inequitable to give effect to such restriction, the courts will not enforce it, whether it be a restrictive covenant to restrain the violation of which injunction is sought, or whether it is a condition providing for a re-entry in case of breach." And of particular interest here, the court says further: "If the court upon sufficient inquiry had found . . . that the conditions had so changed since the conveyance was made, by Negroes occupying the surrounding lots, that an enforcement of the restriction no longer could serve the original purpose, then it would have been improper to allow the forfeiture."

We find it needless to follow appellants' arguments on the technical rules and distinctions made between conditions, covenants and mere restrictions. In many, if not all, of the cases dealing with changed conditions, the terms have been used with apparent disregard of the niceties of differentiation and the reasons advanced would have application to a resulting situation, regardless of the means of its creation. A principle of broad public policy has intervened to the

extent that modern progress is deemed to necessitate a sacrifice of many former claimed individual rights. The only obstacle met has been the rule of property or as termed the disinclination to disturb vested property rights. To some extent this, too, has yielded in the sense that many rights formerly labeled as property rights by a process of academic relation are now considered merely personal and have been subjected to the common good.

The judgement is affirmed.

Knight, Acting P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 14, 1932, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 13, 1932.