## Dowd v. Citizens National Bank & Trust Company of Waynesboro, Pa.

*John W. Keller, Leroy S. Maxwell* and *John McD. Sharpe,* for plaintiffs.

*John R. Lashley, Jr.* and *Millard A. Ullman,* for defendant.

106

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

DEPUY, P. J., March 18, 1964.—Plaintiff's legal position in the case appears to be as follows:

1. There was no authority on the part of defendant bank as Belle Strickler's executor to convey any estate other than an indefeasible fee simple estate, and such being the case, any attempt on the part of the executor to do otherwise created merely an illegal and void limitation upon the title, regardless of any other question involved.

2. Under the circumstances the title limitation contained in the Dowd deed must be construed in such a way as not to exceed the authority of the executor under its power of sale, and therefore must be construed as merely imposing covenants binding the grantees to observe the restrictions and so-called conditions. In such case the reverter clause would have no significance as effecting a possible forfeiture of the title.

3. If it is determined that the executor had the power and authority to convey a defeasible fee simple estate, then the estate conveyed by the executor to Dowd and wife was a fee simple estate subject to condition subsequent, for a violation of which the defendant executor alone would have a right of re-entry.

Plaintiffs take the position that Belle Strickler's executor, in selling the real estate, had the capacity of any landowner to impose building and use restrictions of the customary type but not to do so in the manner here attempted, which would create a defeasible title and set up an assignable right of reverter, as distinquished from merely creating a covenant enforceable in equity in event of breach. Plaintiffs' view is that defendant executor by employing the conveyancing language here used, setting up a restriction or condition subsequent, and by using such vague language as that which prohibits the "conducting of any offensive business or occupation whatever," imposes a gross, uncertain and undesirable burden upon the title of the said real estate, a restraint upon its free alienability, and upon the owners' capacity to obtain title insurance for the realty. Plaintiffs argue that the policy of the law does not favor such a result.

Plaintiffs raise the question whether any executor, being a fiduciary, can, without specific authority contained in the will, make a conveyance which on its face creates an absolute fee simple estate, and then insert provisions which may at some remote date, perhaps a thousand years hence, give rise to a situation where the title to the real estate either reverts to an executor of doubtful identity or becomes subject to other defeasance in favor of persons whose identity or justifiable interest is hard to conceive of.

Decedent died previous to the Fiduciaries Act of 1949, so administration of her will is subject to the Fiduciaries Act of 1917. With either of the statutes,

the result under the power of sale in the will would probably be the same. Plaintiffs argue that a power of sale given to an executor cannot be spontaneously converted by him into a power to lease. See Bruner Estate, 363 Pa. 552, 557, or a power to grant an option: 21 Am. Jur., Executors and Administrators, §208; Misto Estate 21 D. & C. 2d 431, 438, 439.

They say further that no legal authority can be found which accords to an executor, unless expressly given such power by the will, the right to convey less than an absolute fee simple estate, and hence the executor here could have no power to create a fee simple defeasible title in the purchaser.

Belle Strickler's will by its language authorizes the executor "to make, execute and deliver good and sufficient deed or deeds to effectually pass the title therein to the purchaser or purchasers thereof with the same force and effect as I myself could do if living . . ." Plaintiffs say that an instruction "effectually to pass title" exhibits the clear implication that the whole title is to be transferred and not part of it.

Plaintiffs contend that Belle Strickler knew how to convey a base fee and could have made this instruction specific had she wished her executor to so deal with her property. In the seventh item of her will she devises her residence for use as a public library or museum, with the provision that if the beneficiary does not comply with certain conditions of the gift "the said real estate shall revert and become part of my residuary estate and be held by my said executor in trust to handle, manage, rent, control and sell in their discretion. . . ."

Plaintiffs go further and argue that the language of the deed itself, which defendant executor passed to Walter A. Dowd and wife, is entirely inconsistent with the fact of conveyance of any estate less than an absolute fee. They point to this language of that deed which

conveys to the Dowds ". . . the reversions and remainder, rents, issues and profits thereof and all the estate, right, title, interest, property, claim and demand whatsoever of the said Belle Strickler at and immediately before the time of her decease, in law or equity and otherwise howsoever, of, into or out of the same."

Plaintiffs draw attention also to the language of the habendum clause in this deed to Dowds which states that they are ". . . to have and to hold the said granted premises to the said grantees, their heirs and assigns, forever." There is no reference to any right of reverter or of re-entry. In addition the executor expressly covenants and agrees that the executor has not done or knowingly suffered to be done, any act, matter or thing whatsoever, whereby the premises are or may be charged or encumbered in title, charge or estate, or otherwise howsoever.

Next plaintiffs argue that a reading of the deed and of the earlier deeds out of the same land, as the findings of fact recite, shows that nothing more was intended than is usually done these days in protecting lots sold in a development from deterioration in values, and that the usual method is by inserting restrictive covenants, violation of which can be met by a bill in equity or action at law. Plaintiffs say the deed language which they complain of should be treated by the court as simply constituting a covenant rather than as creating any estate in the land in the way of a possibility of right of entry for condition broken.

On the problem before us, the vagueness of the deed language which defendant contends properly limits the estate conveyed is surely a serious handicap to defendants' position. Is it possible that a court should recognize any system of conveyancing by which an estate could be created, defined by such imprecise terminology as here presented. The language can only

be regarded as an invitation to litigation and as inimical to the stability and clarity of titles.

Courts of equity and of law must abhor a forfeiture. Certainly the idea of a floating and uncertain forfeiture is not favored.

The fact that this imprecise language was used in one or more earlier deeds and has the honor of antiquity will not necessarily consecrate it, when examined under the long hard look of a court, the task now thrust upon us.

A somewhat related problem was considered in Second Church of Christ, Scientist v. Le Prevost, 67 Ohio App. 101, 35 N. E. 2d 1015. There a deed provided that in case of violation of a set-back line "said premises shall revert to the said grantors." The Court of Appeals of Ohio construed this to constitute a restrictive covenant and not a condition subsequent.

In W. F. White Land Co. v. Christenson, 14 S. W. 2d 369 (Texas Civ. App.), there was a restriction against erecting a house costing less than $5,000 and nearer than 50 feet to the curbline, and that in event of violation of the condition the land and improvements should revert to the grantor, its successors and assigns. The court held that language providing for a forfeiture is not favored, that, to be honored, a forfeiture provision would have to be clear and specific, and that any doubt in the meaning of language would require the language to be construed as a covenant rather than as a condition.

Higgins v. Sharon Borough, 5 Pa. Superior Ct. 92, is hardly to the contrary. There an executor having a general testamentary power of sale was held to have the implied right to subdivide the land into lots and to provide for streets and other customary easements in connection with those lots. The action of the executor there was for the benefit of the estate, and tended to increase the salability of the lots. Likewise, in the

Dowd situation here, the restrictions can well be construed as covenants imposed by the executor for the purpose of enhancing the value of the realty directed by the will to be sold.

Defendant has argued that the law and rules of civil procedure under the action to quiet title permit the court to do nothing except to adopt defendant's theory declaring the deed to Dowds to be effective as written, in creating a limited fee or in the converse to rule for plaintiffs that the reversion clause is a nullity. We think the necessities of the case and the general policy of the law require a different result. Precedent as well as the Rules of Civil Procedure Nos. 1061 and 1066 permit the court greater latitude and the opportunity to reach an intermediate result.

The matter is discussed in Goodrich-Amram, 1061-(b)-1, 1061(b)-3, 1061(b)-5, and 1066(b)-3. It is there stated that the court may not only declare a deed provision valid or otherwise, but may adjudicate and determine any "right, lien, title or interest in land . . . the validity . . . of any . . . deed affecting any right, lien, title or interest in land." But defendant correctly argues that the rules of procedure cannot create substantive rights.

Pa. R. C. P. 1066(b) (4) provides the court may "enter any other order necessary for the granting of proper relief."

Defendant further contends, that even if, arguendo, plaintiffs are found to have a cause of action against defendant on the ground that limitations in the Dowd deed exceed the power of the executor, they are now estopped in light of the fact that their predecessor in title accepted the deed with the language it contains, to challenge that language or to attempt to enlarge the limited estate granted them; that plaintiffs cannot in fairness accept the benefit of the deed without at the same time accepting the burdens.

There is some logic to this estoppel argument. However, we think there are powerful factors forcing us to the opposite conclusion. It has long been a recognized public policy that the courts shall favor the free alienability of property. In consequence, any action which tends to bring about uncertainties of title, to perpetuate the infirmities of important legal documents controlling title, to consecrate vague language permitting control of current events affecting living persons by the dead hand of those long deceased, to make possible the forfeiture of title to valuable lands upon which expensive improvements have been made, is not likely to receive the sanction of a court if there is any way of avoiding it.

So, where a court in the face of such important considerations must construe a particular document of conveyance, the same public policy cannot favor estoppel of a grantee to raise the question of uncertain title. Nor is it fair or sensible for successors of such a grantee who had nothing to do with the drafting or execution of the deed, to be limited by a rule of estoppel from bringing an alleged unlawful limitation upon unfettered title before the courts. Where executor has attempted to carve out estates and interests not authorized by the will or favored by the law, we think the principle of estoppel or laches cannot be held to obstruct the way of the grantee or his successors in asking the courts to define the effect of the conveyance.

In any event, the argument of estoppel would fall as against persons not yet possessing any estate in the land, in the situation presented in the written agreements, exhibits A and B, relative to the Dowd land now under contract of sale. Plaintiffs emphasize that these agreements between the Dowd estate and the Waynesboro Shopping Center, Inc., demonstrate the extent to which the provisions under discussion con-

stitute a cloud on title with respect to additional real estate beyond that described in the conveyance here in litigation.

Perhaps the most forceful argument in favor of plaintiffs' position here is the following. The terms of the will of Belle Strickler, finding no. 10, clearly direct her executor to "sell" her real estate and "to make, execute and deliver good and sufficient deed or deeds to effectually pass the title therein." This language imports the intention that the executors sell the real estate, convey the title, not *retain* the title or any part of it. The direction to sell is unequivocal and, without express limiting words, is inconsistent with a direction to retain. Such additional words as the will contains on this subject go in the direction of conveying a good and complete title, rather than the converse.

A court should be reluctant on these facts to so construe the conveyance by the fiduciary in a manner to create any novel estate of unusual characteristics and with uncertain meanings for the future. It took our courts centuries to resolve the problem of the dead hand, of mortmain, of undesirable restraints on alienation, and we think it bad policy in the present day to encourage the return of any such powers of the dead over the living, unless unequivocal and legal language requires us to do so.

So far as the people who live or own property in the neighborhood of this land, or any land similarly situated, are concerned, if they have interests to protect and find it desirable to protect them, the avenue of the equitable covenant affords full efficacy for accomplishing that. We see no advantage in permitting such a question to repose in the hands of an executor, even a perpetual one as in case of a corporation which can hardly be expected to maintain an alertness to a problem of this kind on a long term basis. A court of equity can easily supervise, at the instance of whose

interests are endangered, the observance of covenants intended to control land use in the neighborhood. Literal application of the reverter provisions found in the conveyance before us can only be regarded as in terrorem, and not as conferring any real advantage to anybody comparable with the gross harm to the present and future owners of the land that is caused by the uncertainness of the event and vagueness of the language employed. We conclude that the language of the will required the executor to sell, not to retain the title or any part of it; further that the executor lacked power to make a conveyance of limited fee.

Further, the deed language is too vague to be enforced by a court. We construe the provisions limiting use of the real estate in suit, as set forth in findings nos. 15 and 16, as amounting to restrictive covenants and not as creating a limited fee.

Fortunately we do not reach the question posed in the briefs as to the exact nature of the estate defendant asserts was created by the deeds, whether a fee simple determinable, a fee simple subject to a condition subsequent, or whatever. Thus we need not embark upon the arduous highway leading past the Restatement, Property, §§ 44, 45, 57; Simes and Smith, The Law of Future Interests, §§247, 248, and other interesting authorities.

### Conclusions of Law

1. The terms of the will of Belle Strickler, finding no. 10, are held not to grant to the executor any power to convey decedent's real estate, having regard to the deed to Walter A. Dowd and wife, dated April 5, 1944, finding nos. 14, 15 and 16, by conveying other than a fee simple absolute.

2. The provisions found in the deed of April 5, 1944, from Citizens National Bank and Trust Company of Waynesboro, Pa., as executor of the will of Belle Strickler to Walter A. Dowd and wife are found to

constitute covenants restricting the use of the real estate conveyed.

3. The provisions in the said deed which are referred to as "conditions" are found not to create a possibility of reverter to the grantor, successors or assigns, in the sense of creating any estate in the land, limitative of the fee simple estate which the court finds was created in favor of the grantees of the said deed, and not to create any estate defeasible upon breach of conditions subsequent.