**Robert K. HUMPHREY, Individually and as Executor of the Estate of Blanche Meyer Humphrey, Marjorie Hunter Humphrey and Elizabeth Humphrey Murphy, Plaintiffs-Appellants,**

v.

**The C.G. JUNG EDUCATIONAL CENTER OF HOUSTON, TEXAS, Carolyn Grant Fay and Archway Galleries, Defendants-Appellees.**

No. 83-2127
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Sept. 12, 1983.

478

Woodard, Hall & Primm, Roger R. Wright, Jr., Houston, Tex., for plaintiffs-appellants.

Hutcheson & Grundy, Thomas T. Hutcheson, Eugene J. Pitman, Houston, Tex., for defendants-appellees.

Before BROWN, REAVLEY and JOLLY, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

Very rarely does a Texas trespass to try a title suit disturb the collective consciousness of this court. As diversity jurisdiction sometimes manifests itself in unusual ways, however, we consider such a suit today. By interpreting past decisions, we must probe the psyche of the Texas courts to determine whether those courts would enforce the deed clause in question as a condition subsequent with right of re-entry, and so allow the plaintiffs to claim an undivided one-half interest in an improved lot in the museum district of Houston.[1] Finding the clause to be ambiguous, the district court in a bench trial held that the Texas courts would construe the clause as a mere covenant, and so deny the plaintiffs' claim. Accordingly, the court rendered judgment in favor of the defendants. We agree and affirm.

The Humphreys,[2] appellants here, instituted this suit in September, 1976. The district court rendered summary judgment in favor of the defendants on the ground that the Humphreys' right to reenter the property was barred by the Texas three-year statute of limitations. Tex.Rev.Civ. Stat.Ann. art. 5507 (1958). This Court reversed and remanded the case for further proceedings. *Humphrey v. C.G. Jung Educational Center of Houston,* 624 F.2d 637 (5th Cir.1980).

### Case History

The case was submitted to the district court for decision on stipulated facts which we briefly summarize. The disputed property is located in Lot F, in Block 8, of the Turner Addition to the City of Houston, on Montrose Boulevard. Block 8 is divided into six lots of approximately equal size,

---

1. Texas alone, among all the states which comprise the Fifth and Eleventh Circuits, does not allow its Supreme Court to answer questions of state law certified to it by the federal courts. *See United Services Life Ins. Co. v. Delaney,* 396 S.W.2d 855 (Tex.1965). In a reverse sort of way, this case illustrates once again the benefits of the certification procedure, which enables such purely state law questions to be answered with certainty and finality by the highest authority on the subject. *See* Brown, *Certification—Federalism in Action,* 7 Cumb.L. Rev. 455 (1977).

2. Plaintiff Blanche Meyer Humphrey, along with her husband, Herbert Kay Humphrey and their two co-tenants, conveyed away the disputed property in 1920. Plaintiffs Robert K. Humphrey and Elizabeth Humphrey Murphy are children of Blanche and Herbert Humphrey, while plaintiff Marjorie Hunter Humphrey is the widow of a third child of Blanche and Herbert Humphrey. Following Blanche Meyer Humphrey's death in 1977, Robert K. Humphrey, her executor, was substituted as the estate's representative.

which were sold by the owners, the Trustees of the Hermann Hospital Estate, on March 20, 1919. Each deed contained various restrictions, which expired by their terms on January 1, 1935. Lot F was conveyed to Herbert Humphrey and Robert Caldwell. Herbert and Blanche Humphrey also purchased Lot D, while Robert and Edith Caldwell also purchased Lot A. On February 11, 1920, the Humphreys and Caldwells conveyed Lot F to Tom Randolph. That general warranty deed contains the following provisions:

> It is agreed by the vendee herein, as part of the consideration herein and as a covenant running with the land hereby conveyed, that the said land should be used for residence purposes only, and that no dwelling house shall ever be erected thereon, the original cost of which shall be less than $10,000.00 and that no portion of same, other than galleries and steps, shall be erected nearer than 28 feet to the property line on Montrose Blvd., nor nearer than 15 feet to the property line on 16th Street and that no outhouses shall be erected nearer than 35 feet to any street or avenue line, and no part of same shall ever be conveyed, transferred or demised to any person other than of the Caucasian race, and the vendee covenants that he will not use or permit to be used the property hereby conveyed for the purpose of erecting, establishing or conducting thereon any store or shop for the sale of merchandise or any other commodity, and should the owner of the land hereby conveyed at any time fail to comply with any of the provisions of this covenant, Grantors herein, or any owner of property in Block 8, Turner Addition, may by instituting suit, enforce a compliance therewith, or restrain the further violation thereof, or said land shall revert to the Grantors herein, should they so elect.

Resolution of this suit depends entirely upon the interpretation given to those provisions.

The Caldwells sold Lot A in 1941. The Humphreys sold Lot D in 1942. Neither deed placed any restrictions on the use of the property. None of the Humphreys have owned property in or resided in the Turner Addition since 1942.

None of the restrictions set forth in the deed to Lot F were violated prior to August, 1972, when that property was conveyed to Jasper Galleries, Inc. Jasper Galleries demolished the existing residence and built an art gallery building on Lots F and E. The gallery grandly opened in May, 1973. In July, 1975, Jasper Galleries conveyed Lots F and E to Carolyn Grant Fay.[3]

No other lot in Block 8 is still being used for residential purposes. Lots A, B and C are the site of the contemporary Arts Museum, while Lot D is the site of the offices of an architectural firm.

The parties agree that Lot F is being used for nonresidential purposes, in violation of the restrictions contained in the 1920 deed. They differ as to whether under Texas law the Humphreys can enforce those restrictions as conditions subsequent and so reenter the property.

### Analytical Jurisprudence

Fay and her tenants argued below that the Texas courts would construe the residential-use-only restriction as a covenant, the remedies for a breach of which would be limited to injunctive relief and damages, rather than as a condition subsequent, the breach of which would allow the plaintiffs to reclaim title to the property. Even if the restrictions were construed as a condition subsequent, they contended that the Texas courts would apply either the doctrine of enhancement of value or the doctrine of change of conditions to bar the enforcement of the condition.

The district court first considered the possible application of the "enhancement of value" doctrine and concluded that the Tex-

---

**3.** The other appellees, the C.G. Jung Educational Center of Houston and Archway Galleries are lessees of Carolyn Grant Fay.

as courts would not apply it to this situation. The court analyzed four cases in which the doctrine had been applied to find conditions subsequent unenforceable,[4] and found those cases to be distinguishable from this one. "In each of the four cases," wrote the court, "there was evidence before the trial court that the grantor's intent in imposing conditions on the deeded land was to increase the value of the land the grantor retained, and that the consideration for the conveyance was the increased value of the retained land." No such evidence appears in the present case.

The district court also rejected the argument that the Texas courts would refuse to enforce the condition subsequent because of the changed character of the neighborhood. The court pointed out that some jurisdictions permit a change of conditions to be asserted as a defense to an action at law and will on that basis refuse to give effect to a right of reentry or a possibility of reverter. *See Townsend v. Allen*, 114 Cal. App.2d 291, 250 P.2d 292 (1952); *Letteau v. Ellis*, 122 Cal.App. 584, 10 P.2d 496 (1932); *Cole v. The Colorado Springs Co.*, 152 Colo. 196, 381 P.2d 13 (1962). The district court also recognized that Texas has refused to enforce restrictive covenants in deeds because of changed circumstances. The court found, however, that the Texas courts had never applied the doctrine of changed circumstances to render a condition subsequent unenforceable, and correctly refused to extend the reach of Texas jurisprudence.

The district court concluded, however, that even when a deed contains express language of reverter or reentry, a Texas court may construe the deed restriction as a covenant. Such covenants are enforceable only by injunctive relief or damages, not by forfeiture of the estate. Relying on *W.F. White Land Co. v. Christenson*, 14 S.W.2d 369 (Tex.Civ.App.—Fort Worth 1928, no writ), the court held that the provisions in this deed were ambiguous in their meaning. Citing settled Texas rules of construction,

which look with disfavor upon forfeitures, the court then concluded that the Texas courts would resolve that ambiguity in favor of the grantee, Fay, and construe the provisions as covenants. As the plaintiffs sought neither injunctive relief nor damages, they could recover nothing. The court held, moreover, that any recovery under the residential-use covenant would be precluded by the neighborhood's drastic change in character over the years. The court rendered judgment in favor of the defendants.

### Second Opinion

We consider only the single issue of whether the Texas courts would find these deed provisions to be ambiguous and so construe them as creating mere covenants rather than conditions subsequent enforceable by forfeiture of the estate. As did the district court, we must determine how Texas' courts would resolve this question. While the diagnosis is difficult, we are convinced that the district court's analysis was correct.

Forfeitures are not favored under the law. "If the terms of a contract are fairly susceptible of an interpretation which will prevent a forfeiture, they will be so construed." *Henshaw v. Texas Natural Resources Foundation*, 147 Tex. 436, 216 S.W.2d 566, 570 (1949). "The courts will not declare a forfeiture, unless they are compelled to do so, by language which will admit of but one construction, and that construction is such as compels a forfeiture". *Link v. Texas Pharmacal Co.*, 276 S.W.2d 903, 906 (Tex.Civ.App.—San Antonio 1955 no writ), *quoting Automobile Ins. Co. v. Teague*, 37 S.W.2d 151, 153 (Tex. Comm.App.1931).

Forfeitures clauses fail in the event they are ambiguously expressed. As stated in *Decker v. Kirlicks*, 110 Tex. 90, 216 S.W. 385, 386: 'If the provision is ambiguous, that alone condemns it as a forfeiture

---

4. *Brown v. Texas & N.O.R. Co.*, 295 S.W. 670 (Tex.Civ.App.—Beaumont 1927, writ ref'd.); *Stevens v. Galveston H. & S.A. Ry. Co.*, 212 S.W. 639 (Tex.Comm'n.App. Sec. B 1919, judg-ment adopted); *Daggett v. City of Fort Worth*, 177 S.W. 222 (Tex.Civ.App.—Amarillo 1915, no writ); *Maddox v. Adair*, 66 S.W. 811 (Tex.Civ. App.1901, writ ref'd.).

provision. The forfeiture should rest upon surer ground'

*Link*, 276 S.W.2d at 906.

Although conditions subsequent are not favored, however, "Where the language creating the condition is clear and specific it will be enforced." *Hudson v. Caffey*, 179 S.W.2d 1017, 1019 (Tex.Civ.App.—Texarkana 1944, writ ref'd w.o.m.).

The fundamental issue before us, then, is whether the Texas courts would find the language of the 1920 deed to be ambiguous as to whether it creates conditions subsequent with right of reentry or merely a number of covenants. If the courts would consider the language to be at all ambiguous, under Texas law we must decline to enforce the residential-use restriction as a condition subsequent and construe it as a covenant. If there is no ambiguity, however, the Humphreys may reenter and reclaim their share of the property.

We agree with the district court that the Texas courts would find the language in the deed to be ambiguous. The provisions state:

It is agreed by the vendee herein, as part of the consideration herein and as a covenant running with the land hereby conveyed, that the said land should be used for residence purposes only, and that no dwelling house shall ever be erected thereon, the original cost of which shall be less than $10,000.00 and that no portion of same, other than galleries and steps, shall be erected nearer than 28 feet to the property line on Montrose Blvd., nor nearer than 15 feet to the property line on 16th Street and that no outhouses shall be erected nearer than 35 feet to any street or avenue line, and no part of same shall ever be conveyed, transferred or demised to any person other than of the Caucasian race, and the vendee covenants that he will not use or permit to be used the property hereby conveyed for the purpose of erecting, establishing or conducting thereon any store or shop for the sale of merchandise or any other commodity, and should the owner of the land hereby conveyed at any time fail to comply with any of the provisions of this covenant, Grantors herein, or any owner of property in Block 8, Turner Addition, may by instituting suit, enforce a compliance therewith, or restrain the further violation thereof, or said land shall revert to the Grantors herein, should they so elect.

In *White Land Company,* the Court of Civil Appeals construed a deed which contained the following two provisions:

[I]n case the said grantee, or his heirs, as executors, administrators or assigns shall ever violate any one of said conditions contained herein and made a part of the covenants of this deed, the said land and all improvements therein shall immediately revert to and become the property of the grantor herein and its successors or assigns, and it shall be lawful for said grantor and its successors or assigns to re-enter said premises as in its first and former estate.

\*   \*   \*   \*   \*   \*

[T]he conditions herein contained are intended to and shall run with the land, and . . . should the grantee, his heirs, executors, administrators or assigns, or any person claiming under him, violate any of the foregoing covenants, then W.F. White Land Company, or its successors, or any owner of any lot conveyed herein, shall have the right to enjoin the doing of same, and in the event the violation has already taken place, . . . then such remedy shall extend to the removal of the improvements placed on said premises in violation of any covenant herein.

14 S.W.2d at 370.

Although that deed contained express language of both reverter and reentry, the court concluded "that what purported to be conditions subsequent in the deed are merely building restrictions denoting covenants, for the violation of which injunctive relief was provided in the instrument." 14 S.W.2d at 371. The court held that the provision for alternative remedies short of forfeiture and the single reference to the restrictions as "covenants" created ambigui-

ty sufficient to require the court to adopt that interpretation of the instrument.

Recently, in *Malloy v. Newman,* 649 S.W.2d 155, (Tex.App.—Austin 1983, no writ history), a different appellate court construed a deed which also contained language of both covenant and reverter:

The deed purports to grant fee simple title but then contains the following provision at the end of the instrument:

The further *covenant,* consideration and *condition* [sic] is that the following restrictions shall in all things be observed, followed and complied with:

[There follow five enumerated prohibitions: no multiple-family dwellings shall be constructed on the property; the property may not be subdivided without the consent of at least 75 percent of the owners of other tracts in "Bastrop Woods," evidently an unrecorded subdivision; no nuisance or offensive activities may be conducted on the property, nor anything which may become "an annoyance ... to the neighborhood"; no temporary structures may be placed on the property; and the surface of the property may not be altered in any way that results in a diversion of additional water to adjoining properties.]

These restrictions and conditions shall be binding upon grantees, their heirs, legal representatives and assigns for a period of time beginning on the date hereof until and including December 31, 2000, and in case of any violation thereof the title to said premises shall, without entry or suit, immediately revert to and vest in the grantors herein, their heirs and assigns, and the conveyance hereunder shall be null and void,
. . .

649 S.W.2d at 158–59.

Considering the language of the instrument, the court stated,

We find the deed doubtful as to whether the five prohibitions imposed therein upon the use of the property constitute covenants running with the land or conditional limitations upon the estate granted by the deed. The provision for automatic reversion of the estate, without necessity of reentry, is of course indicative of a conditional limitation. Nevertheless, the initial portion of that part of the deed quoted above refers to the five prohibitions as constituting a covenant and a condition. Moreover, it is doubtful that a limitation was intended because there is no manner in which the owners of Bastrop Woods subdivision may be identified to obtain their consent to any subdivision of appellee's property. . . .

649 S.W.2d at 159.

Holding that the provision should be construed as a covenant, the court quoted the Texas Supreme Court's opinion in *Hearne v. Bradshaw,* 158 Tex. 453, 312 S.W.2d 948, 951 (Tex.1958):

Conditions subsequent are not favored by the courts, and the promise or obligation of the grantee will be construed as a covenant unless an intention to create a conditional estate is clearly and *unequivocally* revealed by the language of the instrument. In cases where the intention is doubtful, the stipulation is treated as a covenant rather than a condition subsequent with the right to defeat the conveyance.

649 S.W.2d at 159 (emphasis added by the Court of Appeals).

The Humphreys seek to distinguish *White Land Company* by contending that that case was decided by the application of the "election of remedies" doctrine. That doctrine holds that where two inconsistent remedies are available to a complaining party, the selection of one remedy acts as a waiver of the other. In *White Land Company* the plaintiffs had sought injunctive relief in the alternative to the court's declaration of a forfeiture of the property. The Humphreys claim that the *White Land Company* court declined to order a forfeiture because the plaintiffs had chosen to invoke the less harsh remedy of injunctive relief. *White Land Company* contains language to support the Humphreys' view. At the same time, however, the opinion places great emphasis upon the fact that a deed

must be unambiguous and unequivocal in its language if it is to be construed as creating a condition subsequent. *White Land Company* quite plainly holds that the language in question in that particular deed was not sufficiently clear. The provision for alternative relief and the reference to the restrictions as covenants rendered the deed sufficiently ambiguous to lead the court to interpret it as indeed creating covenants rather than conditions subsequent.

The Humphreys also seek to distinguish *White Land Company* from the present case by pointing to differences in the language of the two deeds concerned. Although the Humphreys' brief does not discuss *Malloy*, we presume that they would also point to the semantic and factual differences between that case and this one. In particular, the Humphreys emphasize that the deed here specifically provides that the land shall "revert" to the grantors "should they so elect." In *White Land Company,* there was no such language in the deed. And, in *Malloy*, although no alternative modes of relief were available, the court relied in part upon the fact that the deed made vague references to an unspecified group of persons whose consent was necessary for the property to be subdivided. No such factor is present here.

The similarities between the instruments and the cases far outweigh any differences, however. In making their decisions, the courts in both *White Land Company* and *Malloy* relied at least in part on the fact that the restrictions in question were expressly referred to in the deed as "covenants." To both courts, the use of that term rendered the deed less than unequivocal in its meaning. Here, the restrictions are consistently described as a "covenant," and never as a condition. As the district court pointed out, the deed contains neither the customary language of a conditional limitation nor that of a condition subsequent. The use of the language of reversion at the end of the provisions does not dispel the ambiguity inherent in the language of the deed.

Both *White Land Company* and *Malloy* stand firmly for the proposition that the Texas courts will construe anything less than clear, plain and unequivocal language as creating merely a restrictive covenant, despite the fact that the deed contains provisions for reverter or right of reentry upon the breach of those covenants. We are convinced that the Texas courts would consider this language to be less than unequivocal. Given that fact, the district court was correct in concluding that the deed was ambiguous and in applying Texas' strong constructional preference for restrictive covenants as opposed to conditions subsequent.

The Humphreys argue that the Texas Supreme Court would not follow *White Land Company.* As they point out, the case has been criticized by one commentator. Goldstein, *Rights of Entry and Possibilities of Reverter as Devices to Restrict the Use of Land,* 54 Harv.L.Rev. 248, 260–62 (1940). We have seen no indication, however, that the Texas Supreme Court would disapprove of or decline to follow either *White Land Company* or *Malloy.* Absent a clear signal to that effect, we are bound to follow these decisions of the highest Texas courts which have expressed themselves on this issue. *Texas v. Figueroa,* 389 F.2d 251, 252 (5th Cir.1968).

Once we have determined that the Texas courts would find these deed provisions to be ambiguous, the case is decided. Under Texas law, such ambiguity must be resolved in favor of the grantee, and the provisions construed as mere restrictive covenants enforceable via injunctive relief or suit for damages. The plaintiffs thus cannot regain the estate via forfeiture. As the plaintiffs have asked for neither an injunction nor damages they are entitled to no relief. Moreover, as the district court found, the plaintiffs would in any event be precluded from enforcing the covenants because of the drastically changed character of the neighborhood in which the disputed property is located.

The district court correctly entered judgment for the defendants.

AFFIRMED.